*Edward T. BEGAY*
Appellant
*vs.*
*NAVAJO NATION ELECTION ADMINISTRATION*
Appellee
In the Supreme Court of the Navajo Nation

No. SC-CV-27-02

July 31, 2002

248

Steven Boos, Esq., Maynes, Bradford, Shipps & Sheftel, LLP, Durango, Colorado, for Appellant.

Henry S. Howe, Esq., Gallup, New Mexico, for Appellee.

Peg Rogers, Esq., Ignacio, Colorado, for Churchrock Chapter as friend of the Court.

Before YAZZIE, Chief Justice, and KING-BEN and FERGUSON, Associate Justices.

Opinion delivered by YAZZIE, Chief Justice. KING-BEN, Associate Judge, concurred separately.

## I. PROCEDURAL HISTORY

On May 3, 2002, the Appellant filed with the Navajo Nation Election Administration ("NNEA") an application for candidacy for the position of President of the Navajo Nation. On June 3, 2002, the NNEA informed the Appellant that he did not meet the residency requirements and was therefore disqualified as a candidate for President. On June 13, 2002, the Appellant filed a written complaint with the Office of Hearings and Appeals ("OHA"). On June 25, 2002, the OHA issued a decision affirming the decision of the NNEA to disqualify the Appellant. *In the Matter of Edward T. Begay*, No. OHA-22-02. An appeal was timely filed with this Court on July 2, 2002.

## II. STATEMENT OF THE ISSUES

The issues present by this case are as follows:

Whether there was insufficient evidence to support the OHA findings.

1. Whether the OHA erred when it failed to interpret the requirements of 11 N.N.C. §8 (A)(l) through the lens of Navajo common law.

2. Whether the requirements of 11 N.N.C. § 8(A) (1) violate Navajo common law which functions as an unwritten constitution.

3. Whether the NNEA is barred by the doctrines of equitable estoppel and Navajo due process from finding that the candidate does not qualify for candidacy because it has never disqualified him for office before.

4. Whether the Appellant's rights to equal protection and due process were violated by the unequal application of the election laws to the candidates for President of the Navajo Nation.

We find that we can resolve the issues before us solely on the grounds of the unequal application of the Election Code. It is therefore unnecessary, and would

amount to an advisory opinion, for us to address any of the other issues raised by the Appellant.[1] We therefore decline to determine whether the evidence was sufficient to sustain the holding of the OHA, whether the residence requirements of the Election Code must be interpreted under Navajo common law, or whether the doctrines of equitable estoppel bar the NNEA from enforcing the residence requirement of the Election Code against the Appellant. Instead, our decision in this case is based on the unequal application of the Election Code.

The sole question here is whether the Appellant was disqualified as a candidate for the office of Navajo Nation President as a result of the unequal application of the requirements of permanent residency and continual presence. More broadly understood, the basic issue is one of fairness. Did the NNEA and the OHA apply the Navajo Election Code to Edward T. Begay as a presidential candidate in a fair way? The Navajo Nation Bill of Rights recognizes liberty as a fundamental right. (1 N.N.C. § 3 (1995)). Liberty cannot be taken away unless it is done using a fair process ("due process") and the law must be evenly applied ("equal protection of the law"). *Id.* For purposes of due process of law under Navajo common law, the right to participate in the political process is considered a protected liberty right.[2] We announce the rule adopted in other jurisdictions that if any ambiguities exist in an election statute, the presumption lies in favor of the candidate. *See e .g. Arnold v. Hughes*, 621 So.2d 1139, 1140 (La. 1993), *Romero v. Sandoval*, 685 P .2d 772, 775 (Co. 1984). Although we have never explicitly adopted this rule, it is clearly consistent with the approach taken in our past election decisions.

Appellant claims that the procedure used by the Navajo Nation Election Administration ("NNEA") to deny him a place on the ballot was unfair. He

[1] It is a traditional rule of interpretation that when asked to address the constitutionality of a statute, a court should first see if it can resolve the issue on more narrow grounds. This is a canon which this Court has followed in the past. *See Gishey v. Begay*, 7 Nav. R. 377, 379 (Nav. Sup. Ct. 1999). It is also a rule followed by the United States Supreme Court. *See, e.g. Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944) and *Jean v. Nelson* 472 U.S. 846, 854 (1985). The reason for this rule is that it encourages courts to exercise judicial restraint. By requiring courts not to address constitutional issues unless it is clear that there is no other means for resolving a case, the rule limits a court's power to strike down legislation.

[2] We indicated in *Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319, 325 (Nav. Sup. Ct. 1990), that "the right or privilege of placing one's name in nomination for public elective office is a part of political liberty...." We recognize that this use of the term "liberty" may seem odd to those not trained in the legal tradition. The common understanding of liberty is that it means freedom from restraint. However, the legal definition of "liberty" includes rights that are considered to be fundamental, such as the right to participate in the political process. This use of the word may be more clearly understood if one considers what is meant when we claim that this is a "free country." One of the main meanings of that phrase is that we are a democracy and that our rights to participate in the political process may not be unnecessarily infringed.

says the ruling of the Navajo Nation Office of Hearings and Appeals ("OHA") in denying his application is also unfair. We therefore ask the following questions. Was he treated fairly? Was there a fair result? Were all Navajo Nation 2002 presidential candidates treated equally? This requires us to address two questions. Was the interpretation of the statute used by the NNEA reasonable? And was their interpretation applied fairly and consistently?

### III. STANDARD OF REVIEW

Before we address the substantive issues of this case, we must determine what standard of review is appropriate to apply to a decision of the OHA. Where there are allegations of violations of due process, this Court "is not limited by the scope of review set forth in Section [341]" of the Navajo Election Code. *Morris v. Navajo Board of Election Supervisors*, 7 Nav. R. 75, 78 (Nav. Sup. Ct. 1993). Rather, where we are addressing the legal interpretations of lower courts and administrative bodies, we apply a *de novo* standard of review

### IV. ANALYSIS OF THE STATUTE

The Navajo Election Code lists the qualifications for candidacy for President. 11 N.N.C § 8(A). Among those qualifications are that the candidate:

> Must have permanent residence and have been continually physically present with the Navajo Nation as defined in 7 N.N.C. § 254 for at least three (3) years prior to the time of the elections. 11 N.N.C. § 8(A)(I)

> Title 7 of the N.N.C. establishes the limits of the Navajo Nation:

> The territorial jurisdiction of the Navajo Nation shall extend to Navajo Indian Country, defined as all land within the exterior boundaries of the Navajo Indian Reservation or of the Eastern Navajo Agency, all land within the limits of dependent Navajo Indian communities, all Navajo Indian allotments, and all other land held in trust for, owned in fee by, or leased by the United States to the Navajo nation or any band of Navajo Indians. 7 N.N.C. § 254

"Permanent Residence" is defined as:

> The place where a person physically lives with the intent to remain for an indefinite period of time. The permanent residence is a person's fixed and permanent home. Permanent means lasting, fixed, stable and not temporary, part-time, or transient. A person cannot have more than one permanent residence at the same time. 11 N.N.C. § 2(Z)

Continually present is defined as:

> Being actually physically present within the Navajo Nation or living on Navajo Country in a fixed and permanent home without any significant interruption. An extended absence from Navajo Country in the course of employment or pursuit of a trade or business or for purposes as

attending school and serving in the military service, is not significant interruption. 11 N.N.C. §2(G)

At first glance the statute seems clear. However, a close reading of the statute shows that its proper interpretation is difficult to ascertain. There are several difficulties with the statutory language that we could not conclusively resolve. Do the definitions of permanent residency and continual presence mirror the legal definitions of domicile and residency, respectively? The definition of the continual presence requirement in particular is difficult to interpret. That definition provides that a candidate must be "actually physically present within the Navajo Nation *or* living on Navajo Country in a fixed and permanent home." 11 N.N.C. § 2(G) (1995) (emphasis added). Does this mean that a candidate must have "a fixed and permanent home" in the Navajo Nation, or does it mean that a candidate may be physically present in another way while not having a permanent home in the Navajo Nation? Do the exceptions apply to both prongs of the test or only to the continual presence requirement? Does the continual presence requirement merely add a durational requirement to the permanent residency requirement? Although Justice King-Ben's concluding opinion provides one possible interpretation, the Court, as a whole, could not agree on the proper answer to these questions.

These questions leave room for an unequal application of the general rule. Unequal application of a general rule can deny a liberty interest. *See, Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319, 325 (Nav. Sup. Ct. 1990). "This court has repeatedly dealt with situations where loose interpretations or applications of election laws create a potential for abuse or selective enforcement." *See, Howard v. Navajo Board of Election Supervisors*, 6 Nav. R. 380, 382 (Nav. Sup. Ct. 1991) (citations omitted).

## V. APPLICATION OF THE STATUTE

The statute as written is confusing. However, if a confusing statute is applied in a fair and consistent manner, it may not deny liberty interests. Therefore, we must determine whether the statute was applied fairly and evenly.

The Appellant initially listed his Gallup, New Mexico home as his address. He received a letter on May 28, 2002, requesting that he clarify his residence. He explained, in a written response to the NNEA's letter, that he had a traditional or customary residence in the Churchrock Chapter. Ms. Antoinette Yellowhorse, another candidate for President, also received a letter requesting that she clarify her residence. The content of these letters was not the same. In the letter mailed to Ms. Yellowhorse, the explanation of the residency requirement indicated that there were some exceptions to the residency requirement. The Appellant's letter contained no such language. After a conversation with Ms. Yellowhorse, the director of the NNEA determined that, "she fell within the exception if you're going to school then you can be allowed to live off the reservation." Appellee's

Brief at 18 (citing the transcript of the OHA hearing at 50–51 (testimony of the Executive Director of NNEA)).

The application for candidacy for President of Mr. Larry Curley was handled by Mr. Robert Black of the Tuba City office. Despite the fact that Mr. Curley listed an Albuquerque, New Mexico address, he was never sent a letter requesting clarification. (OHA hearing, transcript at 72). Rather, because he stated in his voter registration verification form that he worked in Albuquerque but owned some land 4 miles east of Birdsprings Chapter, he was certified as eligible under the "work" exception to the requirements.

There were also questions raised about the residence of Dahaani Baadaani. His application stated a Durango, Colorado address. Mr. Baadaani had submitted his application for candidacy on April 4, 2002, well in advance of the May 3 deadline. The NNEA was forced to qualify him because they neglected to examine his application until after the 30 day deadline had passed.

The NNEA allowed two of these candidates to satisfy the "continual presence" requirement by being present in some way other than having a "fixed and permanent home." In fact, NNEA apparently applied the exceptions not only to the continual presence requirement, but also to the permanent residence requirement. The third candidate was permitted to run on the technicality that NNEA did not act on his application in a timely fashion This third waiver highlights the way exceptions were permitted to arbitrarily overcome the otherwise firm rule of the Navajo Nation residency requirement. The OHA did not examine the "continually present requirement" to see whether any of the exceptions might apply to the Appellant. This is key to this case because NNEA used the exceptions to qualify other applicants who did not have a permanent residence on the Navajo Nation.

Because OHA did not examine the Appellant's application in light of the continual presence requirement, OHA denied the Appellant the opportunity to demonstrate that he, too, qualified for the exceptions to that requirement. Indeed, they did not even inform him of the possibility that he might be covered by an exception. Edward T. Begay could have stated that he was absent from Navajo Country due to employment, trade, business, education, or military service. He initially moved to Gallup due to his wife's employment and children's education. The statute does not explicitly limit the employment or the education exceptions to the candidate himself. He purchased a house for investment and tax purposes. This seems to be a business purpose. Finally, his residence in Gallup is closer to his work in Window Rock than is his traditional home in Churchrock. He might therefore qualify for the employment exception.

Navajo common law strongly supports the role of families in meeting the needs of family members. This is very relevant. Navajo common law highly values respect. NNEA showed respect for one presidential applicant's desire for an education in Gallup and another's professional career in Albuquerque. It

appears that the third was approved because of NNEA's own neglect. What about the Appellant? Did he have a right arising from Navajo practice of respect for his family's needs?

We do not know whether such arguments would have succeeded before NNEA or OHA. The point is that the failure to determine whether Appellant satisfied the "continually present" requirement denied him the opportunity to make these arguments or any others. The other applicants, in contrast, were allowed this opportunity.

The policy for examining candidate qualifications was applied unevenly. The various suboffices seem to have had different understandings of when it was appropriate to send these letters. Further, the actual content of the letters sent was not consistent. At the Crownpoint office, the Voter Registration Specialist went to the homes of at least two potential candidates to see if they actually lived there. The other suboffices appear to have done no more than send letters to the candidates, if that. Finally, because the NNEA had to either certify or decertify a candidate within 30 days of the submission of his application, the NNEA did not have enough time to investigate candidates who had submitted applications in advance of the May 3 deadline.

Vagueness of the election law and its loose and unequal application led to a denial of the Appellant's right to participate. In *Howard v. Navajo Nation Board of Election Supervisors*, 6 Nav. R. 380 (Nav. Sup. Ct. 1991), the Court remedied a similar loose application of an Election Code provision. Chief Justice Tso and Associate Justice Bluehouse, in their majority opinion, decided not to strike down the statute as void on its face. Rather, they preserved the statute by finding that the statute was vague as applied. *Howard*, 6 Nav. R. 380-383. When a statute is vague or confusing, this Court can save the statute by interpreting it so as to avoid unfairness. *Howard*, 6 Nav. R. at 382. This Court can also direct the relevant authority to develop, for future cases, a consistent and fair interpretation and procedure. In the present case we decline to find the statute itself void for vagueness. Rather, we follow the approach of the majority in *Howard* and find it vague as applied because the statute could be read in several ways. It was read one way for two candidates, read differently for Appellant, and not read at all for a third candidate. If law is to mean anything, it must be consistent in the way people are treated. In this case, the candidacy definitions were unequally applied. We recommend that the NNEA develop a consistent and fair procedure for enforcing these provisions of the Election Code. We emphasize the importance of developing such a procedure well in advance of the next election.

## VI. THE REMEDY

The appropriate remedy, when candidacy requirements have been unequally applied, is to order the candidate placed on the ballot. This does not mean that the Court finds that. The candidate meets the candidacy requirements. Rather, it

amounts to a conclusion that because the process was so badly flawed, it is unfair to exclude a candidate regardless of whether he would qualify or not.

For example, in *Deswood v. Navajo Board of Election Supervisors*, 1 Nav. R. 306 (Nav. Ct. App. 1978), this Court was faced with a claim that candidacy requirements had been selectively applied. In that case, Peter Deswood had been disqualified from running for Navajo Tribal Council because he did not meet the age requirements. We found that the Navajo Board of Election Supervisors ("NBOES") had only examined the qualifications of four of 161 candidates. We therefore found that NBOES had "selectively applied its powers to decide candidates' qualifications." *Id.* at 311 Because NBOES had not consistently applied the law, this Court declined to address the actual question of Mr. Deswood's age. Rather, we ordered Mr. Deswood placed on the ballot, regardless of his age, because "the selective application of the power to disqualify candidates in the Navajo election requires this Court to void any use of the power by the Board of Election Supervisors." *Id.* at 311.

Therefore, and in accord with our precedent, we find that the appropriate remedy for the unequal application of the candidacy requirements is to order the Appellant placed on the ballot for the primary election for Navajo Nation President. We do so without addressing whether the Appellant would have qualified under the statutory requirements had they been fairly enforced. Rather, we find the unequal application of the laws was so unfair that the Appellant must be placed on the ballot regardless of whether he met the requirements or not.

## VII. CONCLUSION

The present case is about fairness. The residency requirement was applied in a manner that denied Appellant procedural due process, substantive due process (the liberty interest) and equal protection of the law (fair, consistent and equal treatment). Navajo common law requires that people be treated fairly, consistently and equally. That was not the case for Appellant.

We conclude that Appellant was denied the substantive due process right to liberty and equal protection of Navajo law. The Navajo Election Code was applied to him in an unfair and unequal way. Given the manner in which the Code was applied, Appellant's right to run for office and the rights of the Navajo People to vote for the candidate of their choice, we REVERSE the decision of the Navajo Nation Office of Hearings and Appeals and hold that Appellant's name should be placed on the 2002 election ballot.

KING-BEN, Associate Justice, concurring opinion.

I concur with the holding of the majority. I agree that the statute was unevenly enforced. I write separately to express my belief that the requirements of 11 N.N.C. §8A(1) are clear on its face.

The Appellant has asked this court to determine whether the residency requirement set out at 11 N.N.C. §8(A) should include the Navajo common law definition for residency and attempts to persuade this Court that his name should be placed on the ballot as a candidate. Appellant argues that he meets the residency requirement based on a Navajo Common law belief that one is a resident of the place where his umbilical cord is buried. The Appellant further contends that the Navajo Nation Council did not visit the issue of common law residency and that this Court should apply common law as common law is controlling within the Navajo Nation.

It must first be made clear that prior to the 2002 election, the Board of Election Supervisors was a quasi-judicial body and heard election related administrative complaints filed pursuant to the Navajo Election Code. However, this authority to hear election complaints was transferred to the Office of Hearings in appeals on January 24, 2001. (*See* Navajo Nation Resolution CJA-05-01). The certification requirements that the Navajo Election Administration is required to apply in this 2002 election is being applied for the first time. It is understandable that there may be confusion when applying new laws and it is conceivable that mistakes may be made.

The Navajo Nation Council was cognizant that challenges would be made and set out a way to redress the complaints. Pursuant to 11 N.N.C. §24, "... Appeal may be made by either party to the Navajo Nation Supreme Court within ten (10) days of the date of decision. The Supreme Court shall review the appeal no later than fifteen (15) days from the date of filing. Review by the Supreme Court shall be limited to *whether or not the decision of the Office of Hearings and Appeals (OHA) is sustained by sufficient evidence in the record.*" (emphasis added). The OHA upheld the Navajo Nation Election Administration's (NNEA) decision for the following reasons: 1) the Appellant listed 105 Martennili Drive, Gallup, New Mexico and P.O. Box 2275, Window Rock, Arizona, on his candidacy application as his address; 2) the Appellant's Candidate's Voter Registration Verification indicated his Gallup, New Mexico address; 3) the Appellant testified that he has a home in Gallup, New Mexico and a hogan at Churchrock, New Mexico which he uses for ceremonial purposes; 4) the Appellant has a grazing permit in Churchrock, New Mexico; 5) the Appellant does not own a homesite lease; 6) the Appellant does not have actual residence in Churchrock, New Mexico; and 7) the Appellant's witnesses testified that he lives in Gallup, New Mexico. This Court is thereby limited to review the evidence in the record. However, a *de novo* review will result if there is a question of law. Here the appellant argues that Navajo common law recognized his residence as Churchrock, New Mexico, and the OHA erred by not applying Navajo Common law. Should the Navajo common law definition of residency be applied?

Contrary to the Appellant's arguments, it is evident from the minutes of the Navajo Nation Council, specifically the minutes of April 6, 1990, the issue of

"residency" and "continually present" was debated extensively. The legislative history shows that the legislature had debated the issue of the residency of a candidate and made a conscious decision not to adopt a Navajo common law residency. (*See* pages 3-7, 11 and 43 of the April 6, 1990 minutes of the Navajo Nation Council). The law that the Council voted to adopt is the following definition:

A. Qualification for President and Vice-President Are:

1. Must have permanent residence and have been continually physically present within the Navajo Nation as defined in 7 N.N.C. §254 for at least three years prior to the time of election. 11 N.N.C. §8(A).

I interpret 11 N.N.C. §8(A) to be clear on its face. However, the majority are convinced that the requirement is vague and refer us to the definition of "continually present" at 11 N.N.C. §2(G). "Continually present" is defined in the statute as "[b]eing actually physically present within the Navajo Nation or living on Navajo Country in a fixed and permanent home without any significant interruption. An extended absence from Navajo Country in the course of employment or pursuit of a trade or business for the purposes of attending school and serving in the military service, is not significant interruption."

I interpret 11 N.N.C. §8(A) to be a two-prong test. First, the presidential candidate must have a permanent residence within the Navajo Nation as defined in 7 N.N.C. §254. Second, the presidential candidate must have been continually physically present within the Navajo Nation three years prior to the election. Again, the majority believes that " [b]eing actually physically present within the Navajo Nation or living on Navajo Country in a fixed and permanent home without any significant interruption" is vague. However, the Appellant did not qualify for a slot on the ballot for presidential candidate because he met the first clause of the second prong test.

The majority also entertains the idea that maybe a candidate's absence from the Navajo Nation can be justified due to a family member's absence from the Navajo Nation for purposes of employment, military service or school attendance. I differ on the majority's decision to entertain the idea that the "continually present" definition as set out at 11 N.N.C. §2(G) may exempt a candidate from meeting the continual presence requirement due to family members residing off the Navajo Nation as defined in 7 N.N.C. §254. The election laws are clearly about the candidate's qualifications to run for office. There is no evidence that the Navajo Nation Council entertained the idea that one qualify as a resident when they live off the Navajo Nation due to family members' circumstances.

I am even more convinced that the intent of the legislature to require that a candidate for the president's position be a resident of the Navajo Nation as the qualification for the Navajo Nation President is also spelled out in Title Two of

the Navajo Nation Code which deals with the Navajo Nation Government. 2 N.N.C. § 1003(B) states:

> No person shall serve as President or as Vice-President of the Navajo Nation unless he/she has continually, during the last three years before the time of election been physically present within the Navajo Nation. The "Navajo Nation" is defined at 7 N.N.C. §254.

Furthermore, prior to the amendments of Title Two of the Navajo Nation Code, 2 N.N.C. §1004 was codified at §283 and read as such:

> (b) No person shall serve as Chairman or as Vice-Chairman of the Navajo Tribal Council unless he has during the last three years before the time of election lived on the land of the Navajos, that is, on tribal or allotted land within the boundaries of the Navajo Reservation, or on land of a restricted allotment or homestead, or on purchased or exchanged land or on public domain outside of said exterior boundaries, *or in the immediate vicinity of the reservation, and in the case of such non-resident that he has participated continuously and actively in the affairs of the Tribe* for the three years prior to his taking office. The Tribal Council shall, by majority vote, decide whether such continuous active participation in Tribal affairs on the part of the candidate has taken place and shall so certify. (my emphasis).

The Navajo Nation Council by resolution changed the above definition in CD-68-89 when it adopted the amendments. The amendments make clear that the language *"or in the immediate vicinity of the reservation,"* and *"in the case of such non-resident that he has participated continuously and actively in the affairs of the Tribe"* were struck.

Again we could debate whether the above definition is vague but as both 11 N.N.C. and 2 N.N.C. refer us to the same definition set out at 7 N.N.C. §254, we need not discuss 2 N.N.C. §1004 any further. However, we are led to the discussion of the definition of territorial jurisdiction as defined in 7 N.N.C. §254. "Navajo Nation" is defined as:

> The territorial jurisdiction of the Navajo Nation shall extend to Navajo Indian Country, defined as all land within the exterior boundaries of the Navajo Indian Reservation or of the Eastern Agency, all land within the limits of dependent Navajo Indian communities, all Navajo Indian allotments and all other land held in trust for, owned in fee by, or leased by the United States to the Navajo Nation or any Band of Navajo Indians.

Again, there was debate by the legislature in defining "Navajo Nation" as evidenced by the minutes of Navajo Nation Council April 6, 1990 amendments as well as the legislative history of 7 N.N.C. §254.

Therefore, applying the standard of review as set out in 11 N.N.C. §24(G) as amended and adopted by the Navajo Nation Intergovernmental Relations

Committee on October 10, 2000, requires this Court to look at the sufficiency of the evidence. Based on the record, there is sufficient evidence to show that the Appellant is not a resident of the Navajo Nation as required by 11 N.N.C. §8(A), and as defined in by 7 N.N.C. §254

However, the issue this Court addresses is whether Appellant Edward T. Begay's non-certification of his application for the Navajo Nation president candidacy was denied as a result of the unequal application of the Navajo Nation election laws. It must be made clear that this Court's decision to allow the Appellant on the ballot is not because he met the residency requirement but because the candidates were not treated similarly in the process of applying and determining residency of the candidates. The guarantee of substantive due process assures that the law will be fair and reasonable, not arbitrary. Equal protection review is triggered where persons similarly situated are treated differently.

As discussed in the majority opinion, it is not exactly clear what process the Navajo Election Administration applied in determining candidacy. However, if the election laws were applied equally as set out in 11 N.N.C. §8(A), the NNEA should have disqualified all the candidates who do not reside within the Navajo Nation as defined by 7 N.N.C. §254. In essence, this would mean that candidates, Curley, Badaanii, and Begay would not qualify under the first prong of 11 NNC §8(A) as they are not residents of the Navajo Nation as defined by 7 N.N.C. §254. If the election laws were applied strictly and equally, of the candidates in issue, the only candidate who would have qualified as a presidential candidate is Yellowhorse, the NNEA, upon determining that she met the first prong of the test for determining residency would then determine why she has not been continually present within the Navajo Nation for the last three years. Yellowhorse met the "continually present" exception as her extended absence from Navajo Country is due to purposes of attending school at the University of New Mexico-Gallup Branch.