OPINION

This case concerns whether a candidate for Navajo Nation President, who did not reside and was not continually present within the territorial jurisdiction of the Navajo Nation for the last three years prior to the 2006 election, was properly disqualified from appearing on the ballot. Immediately after oral arguments, the Court issued an order requiring the Navajo Nation Election Administration (Administration) to place Appellant on the ballot to run for President. The Court now gives its reasons for that decision.
I
The relevant facts are as follows. Vern Lee (Lee) filed an application to run for Navajo Nation President with the Administration. Consistent with Section 8(A)(1) of the Navajo Election Code (Election Code), the application asks whether the applicant has resided and been continually present with the Navajo Nation for three years prior to seeking to run for president. Lee answered no, as he lives in Fruitland, New Mexico outside the boundaries of the Navajo Nation. Thereafter Lee was informed by letter that he was not eligible to *790 run for president, due to his lack of residency and continual presence.
Lee appealed Ms disqualification to the Office of Hearings an Appeals (OHA). OHA upheld his disqualification, ruling that the statutory residency and continual presence requirements were clear, and precluded Lee from running for president. OHA did not consider the requirements’ consistency with Diñé bi beenahaz’ áanii Lee appealed to this Court.
The Court held oral argument at the Shiprock Chapter House on July 10, 2006, and reversed OHA’s decision. The Court ordered that the residency and continual presence requirements were in conflict with “the fundamental- right of the Diñé to participate in their government and to choose leaders as expressed in Title 1, Section 203(A) and previous decisions of the Navajo Nation Supreme Court.” Order, July 10, 2006, at 1. Based on that reason, the Court ordered the Administration to place Lee on the ballot.
II
The issue in this case is whether the requirement that a Navajo Nation presidential candidate reside and be continually present within the territorial jurisdiction of the Navajo Nation for three years prior to the election is valid.
III
The Court’s standard of review of OHA’s decision is set by statute. Review is limited to “whether or not the decision of the Office of Hearings and Appeals is sustained by sufficient evidence on the record.” 11 N.N.C. § 24(G) (2005). Though the provision emphasizes the sufficiency of the evidence, clearly a decision based on an erroneous interpretation of the law cannot be sustained by sufficient evidence. The Court therefore has the authority to examine the underlying legal interpretation, and can reverse an OHA decision if the law OHA relies on is not valid. See Begay v. Navajo Nation Election Administration, No. SC-CV-27-02, 4 Am. Tribal Law 604, 607, 2002 WL 34461285 at *2 (Nav.Sup.Ct.2002).
IV
This Court is once again confronted with the residency requirement the Navajo Nation Council imposes on presidential candidates. Taken together, the Election Code and Title 2 of the Navajo Nation Code purport to limit who may run for Navajo Nation President to those wrho “reside” and are “continually present” within the Navajo Nation prior to the election. 2 N.N.C. § 1004; 11 N.N.C. § 8(A)(1) (2005). The Title 2 provision requires that a person be “continually ... physically present” during the last three years before the election. The Election Code provision requires that a candidate not only have been “continually present,” but also have had “permanent residence” within the Navajo Nation for three years prior to the election. 11 N.N.C. § 8(A)(1) (2005). Both provisions define the Navajo Nation by the boundaries of the Nation’s territorial jurisdiction set out in 7 N.N .C. § 251 (2005). The Election Code includes several exceptions to the “continually present'’ requirement, including allowing “[a]n extended absence from Navajo Country in the course of employment or pursuit of trade or business or for purposes of attending school and serving in the military service.” 11 N.N.C. § 2(1) (2005).
The Court heard a challenge to the Election Code provisions in the last election cycle. See Begay, No. SC-CV-27-02, 4 Am. Tribal Law 604, 2002 WL 34461285. However, the Court did not resolve the ultimate issue of the validity of the resi dency requirement, but, instead focused on *791 the inconsistent application of the require-merit to candidates in that election. See id,, 4 Am. Tribal Law at 608-10, 2002 WL 34461285 at *3-5. The Court ruled that the Election Administration treated the issue of Mr. Begay’s residency differently than other candidates, and therefore violated his due process rights. Id. Similarly, in Gishey v. Begay, 7 Nav. R. 377, 1 Am. Tribal Law 709 (Nav.Sup.Ct.1999), the Court did not directly address the residency requirement, even though the appellants raised the issue.
In this case, the Court deals with the issue of the validity of the residency requirement in both Title 2 and the Election Code in the context of the Fundamental Law statute, 1 N.N.C. §§ 201 et seq. (2005). Lee makes several arguments concerning these provisions, including that they are invalid under Dine bi beenahaz' áanii. Importantly, Lee does not claim to fit within any exception to being “continually present” within the Nation, but instead attacks the requirements directly. The Administration disagrees, arguing, without explicitly explaining why, that the provisions are not inconsistent with Dine bi beenahaz’ áanii and that the residency requirement is merely a procedural framework for the people to exercise their right to choose their leaders. See supra, at 791 (discussing right of the people to choose leaders of their choice). There may be other reasons for reviewing the requirement’s validity, such as vagueness. See Begay, No. SC-CV-27-02, 4 Am. Tribal Law at 609, 2002 WL 34461285 at *4 (discussing concept that statute may be invalidated if vague) [1]; Rough Rock Community School Bd., Inc. v. Navajo Nation, 1 Nav. R. 168, 173-175 (provision requiring interest, experience and ability in educational management void for vagueness and void because an unreasonable restriction on right to seek election); Howard v. Navajo Nation Board of Election Supervisors, 6 Nav. R. 380, 382-83 (Nav.Sup.Ct.1991) (Austin, J. concurring) (provision disqualifying candidates for misdemeanors involving welfare of children void for vagueness); Bennett v. Navajo Bd. of Election Supervisors, 7 Nav. R. 319, 325 (Nav.Sup.Ct.1990) (provision restricting presidential and vice-presidential candidates to those who served in elected tribal office or were employed by Nation void for vagueness). The Court will not address that issue. The Court addresses the Fundamental Law issue directly because challenges to the validity of residency requirements for reasons other than vagueness have occurred virtually in every election cycle for a number of years, and yet have never been resolved, causing confusion and disruption of the electoral process. Also, the Council had not yet passed the Fundamental Law statute at the time of Begay, potentially altering the analysis. Finally, the Court specifically requested that the parties address the application of Diñé bi beenahaz’áanii
The Council may establish requirements for elected offices, but such requirements must conform to Diñé bi beenahaz’ aáanii There is a basic right, highlighted in the Fundamental Law statute, that the Dins have the right to choose leaders of their choice. 1 N.N.C. § 203(A) (2005). Further, under Dine bi beenahaz’ áanii, Navajo candidates have a liberty interest to participate in the political process by running for office. Begay, No SC-CV-27-02, 4 Am. Tribal Law at 605, 2002 WL *792 34461285 at *1; Bennett, 7 Nav. R. at 325. The residency requirement must be considered in light of these fundamental rights. If it is in irreconcilable conflict with those rights, that is, if it defeats the ability of the people to elect leaders : of their choosing and candidates to run for office, it must yield. See In re Estate of Kindle, No. SC-CV-40-05, 6 Am. Tribal Law 750, 753, 2006 WL 6168972 at *3 (Nav.Sup.Ct.2006) (statute passed prior to Fundamental Law statute must yield if it cannot be reconciled with Dine hi beena-haz’ áanü ).[2]
Though the rights to choose leaders and to participate in the Navajo political process are fundamental, they are not absolute. A broad reading of these rights might invalidate any perceived limitation on candidates, including filing deadlines, reporting requirements, or restrictions on campaigning. Therefore, absent some regulation of those rights, the Navajo election system cannot function. Further, other principles of Diñé bi beenahaz’ áanü, may preclude certain candidates from running for office, and therefore restrictions based on such principles do not improperly burden those rights. There are then election rules that justifiably limit candidate eligibility to allow the election system to function or further other principles of Dine bi beenahaz’ áanü, Such rules can be harmonized with the fundamental rights of voters and candidates, and are therefore valid. This Court has stated that these rights are protected by requiring that restrictions on the rights must meet a reasonableness standard. See Rough Rock, 7 Nav. R. at 172-73. In other words, Navajo laws which restrict these fundamental rights “must be based upon reasonable public policy.” Id. The question is whether limiting presidential candidates to those who reside and are continuously present within the territorial boundaries of the Navajo Nation for three years is one such justifiable rule.
The Court holds that the residency requirement is not a justifiable limitation, and therefore is in irreconcilable conflict with the fundamental rights of voters and candidates. Several justifications exist for restricting presidential candidates to resi *793 dents of the Navajo Nation. The main reason given is that the restriction purportedly guarantees that candidates are aware of and sensitive to the needs of the Nation, as they live among the People and understand their conditions and culture.[3] That purported reason does not justify limiting the fundamental rights of voters and candidates. Even assuming the underlying belief is correct, that residents within the lines demarcating the current territorial boundaries of the Nation are more aware of the needs of the People, the Council does not need to outright prohibit the candidate from even running for office. If the People are concerned that candidates unfamiliar with Navajo life run in elections, they are free not to vote for that candidate. The candidate’s ignorance of the Navajo experience will be immediately apparent when the candidate campaigns and discusses the issues with the People. It is not for the Council to restrict the People’s ability to judge the value of the candidate’s message, merely because he or she did not, prior to the election, live within a statutorily-defined boundary for three years. The People can, and will, make that judgment.
Furthermore, the use of the definition of the Navajo Nation’s modern territorial jurisdiction, 7 N.N.C. § 254, to demarcate the land upon which one must reside if he or she desires to run in an election is itself unreasonable. Section 254 generally establishes the lands upon which the Navajo Nation government has authority, a purpose totally different and distinct from the fundamental rights at issue. Interestingly, the Election Code requires residency and continual presence within that defined territory to run for office, but not to vote in the election itself. See 11 N.N.C. § 281(C) (2005). Regardless, utilization of the boundaries set by Section 254 unreasonably restricts the fundamental rights of a significant number of Dine.[4]
V
Based on the above, the Court struck the residency provision, and allowed Mr. Lee to run for Navajo Nation President. The effect of that ruling is that the Election Administration may no longer enforce the residency provisions.

. Interestingly, evert though the Court in Be-gay declined to find the statutory requirement void for vagueness, it did find the requirement “vague as applied because the statute could be [and, in fact was) read in several ways." No. SC-CV-27-02, 4 Am. Tribal Law at 610, 2002 WL 34461285 at *5.

. The Court has applied a rule of interpretation that incorporates Diñé bi beenahaz’ áanü to discern the meaning of provisions of the Navajo Nation Code. See Begay v. Chief, No. SC-CV-08-03, 6 Am. Tribal Law 655, 657-59, 2005 WL 6235870 at *2-3 (Nav.Sup.Ct.2005); Allstate Idemnity Co. v. Blackgoat, No. SC-CV-15-01, 6 Am. Tribal Law 631, 634-35, 2005 WL 6235872 at *2-3 (Nav.Sup.Ct.2005); Tso v. Navajo Housing Authority, No. SC-CV-10-02, 5 Am. Tribal Law 438, 442-43 nn. 1, 9, 2004 WL 5658576 at *2-3 nn. 1,9 (Nav.Sup. Ct.2005). If the language is ambiguous, the Court considers Diñé bi beenahaz’ áanü in its analysis, and applies a meaning consistent with Fundamental Law. Id. However, if the language is clear, the Court applies the meaning the Council clearly intended. Id. The issue before the Court is a different one. The Court is not attempting to interpret what a single provision means, but is reconciling several provisions which are in conflict: the Election Code, Title 2, and the Fundamental Law statute. Given the clearly articulated policy in the Fundamental Law statute that the Nation’s government adhere to and apply the fundamental principles of the Dine life way, 1 N.N.C. §§ 203(B)-(E), (J); 206 (2005), a provision in another part of the Code, passed before the Fundamental Law statute, and in irreconcilable conflict with one of those principles must yield. See Kindle, No. SC-CV-45-05, 6 Am. Tribal Law at 753, 2006 WL 6168972 at *3 (striking Probate Code provision mandating application of state probate law if "custom” unproven as inconsistent with mandate in Fundamental Law statute that judges apply Diñé bi beenahaz’ áanii ), cf. Allen v. Fort Defiance Housing Corp., No.; SC-CV-05-05, 6 Am. Tribal Law 713, 715-16, 2005 WL 6235947 at *2-3 (Nav.Sup.Ct.2005)' (in examining two potentially conflicting statutes, Court looks at policies of each and aC tempts to reconcile them).

. This rationale was explicitly mentioned in Council debate as support for passing the residency requirement. See Minutes of the : Navajo Nation Council, April 6, 1990, at 4 (Statement of Ernest Begay).

. The Court takes judicial notice that the 2000 Census recorded approximately 45,000 Nava- ; jos living in metropolitan areas clearly outside ; the Navajo Nation as defined by 7 N.N.C. § 254. Navajo Nation Division of Economic Development, Navajo Nation Data Extracted from U.S. Census 2000 at 64. While, of course, not all of these self-identified Navajos are of voting age, and some may not be enrolled tribal members, this statistic still shows a significant number of Navajos potentially affected by the residency requirement.