OPINION

Dr. Joe Shirley, Jr. appeals the decisions of the Office of Hearings and Appeals (“OHA”) that upheld the Navajo Nation Election Administration’s (“NEA”) disqualification of Dr. Shirley’s candidacy for Navajo Nation President for a third term pursuant to 2 N.N.C. § 1002(D). For the reasons below, we AFFIRM the OHA’s decisions and clarify that 2 N.N.C. *324 § 1002(D) limits the President to two consecutive terms and is not a lifetime limit on persons seeking that office.
I.
This case arises from two complaints filed with the OHA. The first complaint was filed by presidential candidate Jerry Jay Todacheene on May 13, 2010 challenging Dr. Shirley’s candidacy for a third term as President of the Navajo Nation. The second complaint was filed by Dr. Shirley on June 3, 2010 challenging his disqualification by the Navajo Nation Election Administration (“NEA”). OHA consolidated both matters on June 11, 2010 upon Dr. Shirley’s motion.
The sole gravamen of both complaints is the two-year term limit set by 2 N.N.C. § 1002(D) on the Navajo Nation President. Mr. Todacheene asserts the provision is valid and must be enforced. Dr. Shirley asserts the provision is invalid because (a) it violates equal protection; (b) it violates individual and collective liberty rights, (c) it was enacted twenty-one years ago as a temporary fix to prevent governmental concentration of power but has resulted merely in a harmful shift of power concentration to the Council, and (d) the provision was repealed by the enactment of the 2002 Dine Fundamental Law Statutes.
At a hearing on June 15, 2010, Dr. Shirley and the NEA appeared by counsel and Mr. Todacheene appeared pro se. The parties presented their positions orally without calling any witnesses. Subsequent to the hearing, the parties were permitted to submit supplemental written arguments. On June 25, 2010, OHA issued a summary decision in which it determined that 2 N.N.C. § 1002(D) is clear and unambiguous with regards to presidential term limits and was not repealed by the Fundamental Law statute. OHA further determined that NEA’s disqualification of Dr. Shirley’s candidacy did not violate Dr. Shirley’s liberty interests or equal protection rights and did not violate Diné bi beenahaz’áanii. On June 28, 2010, Dr. Shirley timely appealed OHA’s decision. On July 2, 2010, Dr. Shirley filed his Opening Brief. On July 7, 2007, the NEA filed its response. Mr. Todacheene did not submit any written brief. On July 9, 2010, oral argument was held at the Navajo Nation Museum in Window Rock.
Due to concerns over election timelines, the Court issued a short order immediately following oral argument affirming the OHA’s determination that Dr. Shirley cannot run as a candidate for the Office of Navajo Nation President in the upcoming 2010 elections for a third consecutive term. This opinion sets forth the reasons for the Court’s decision.
II.
We have appellate jurisdiction to review whether OHA acted within its statutory discretion pursuant to 11 N.N.C. § 341(A)(4).
Whether OHA appropriately determined the validity of 2 N.N.C. § 1002(D) is a question of law. When “addressing the legal interpretations of ... administrative bodies,” this Court applies “a de novo standard of review.” Nelson v. Initiative Committee to Reduce Navajo Nation Council, 8 Am. Tribal Law 407, 412 (Nav. Sup. Ct. 2010) citing Begay v. Navajo Nation Election Admin., 8 Nav. R. 241, 250, 4 Am. Tribal Law 604, 607 (Nav. Sup. Ct. 2002).
III.
Meaning of 2 N.N.C. § 1002(D)
2 N.N.C. § 1002(D) provides that “[t]he President shall serve no more than two terms.” Dr. Shirley asserts that the moti *325 vation behind the term limits provision was less the public welfare than the Council’s desire to punish a particular elected position (i.e. Council Chairman). Additionally, at oral argument, the NEA asserted that the provision is a justifiable restriction as it only restricts Dr. Shirley’s right to run for a third consecutive term as President, after which he is free to run again for President without restriction. Dr. Shirley believes that the provision is a lifetime limit.
We will examine if there is any specific meaning to the provision’s emphasis on “President” rather than on persons running for Office; and further look to the record of the Council’s deliberations to see what the Council intended.
Every word, clause, and sentence of the statute must be examined to determine if the language is clear. If not, we must find the intent of the Navajo Nation Council to interpret those sections. Office of Navajo Labor Relations v. Navajo Housing Authority, 7 Nav. R. 50, 51 (Nav. Sup.Ct.1993). Section 1002(D) was enacted on December 15, 1989 as part of the “Title Two Amendments of 1989.” (“Title II Amendments”) Resolution CD-68-89, Title Two, codified at 2 N.N.C. § 1 et seq.[1] Prior to the Title II Amendments, the Navajo Nation government had no term limits. Following the Title II Amendments, term limits applied, and continues to apply, only to the Office of the President and Vice-President and to no other Navajo Nation elected office.
a. Purpose. A review of the Record of the Navajo Nation Tribal Council from December 14, 1989 (“Record ”) shows that term limits for the President, Council and Speaker were discussed at length during deliberations on the Title II Amendments. Delegate Thomas Barbone stated: “The president’s term [sic] states that he will have two terms only, which 1 understand is four years for one term and another four years is a second term and that’s all. However, I’d like to request that the Council Delegate’s terms be unlimited ...” Record at 1193. Delegate Emmett Bia discussed “turnover” in Delegates serving in the Council, staggered terms, and a suggestion for “drawing straws.” Id. at 1223. Delegate Anderson Tully pushed for a change in language from “may” to “shall” in the presidential term limits provision due to “public consensus.” Id. at 1218. Term limits were also considered for the newly created Speaker’s Office due to the recognition that the Office would, and eventually did come to, wield considerable power. Delegate Tully proposed that the Speaker be limited to two consecutive terms and be elected by secret ballot. Id. at 1216. Ultimately, term limits were not placed on the Speaker on the rationale that he would serve by selection of the Delegates themselves, and each term served would be limited to two years.
Although, as Dr. Shirley points out, there was some strenuous advocacy by Delegates that their positions be made exempt from term limits, there was also sufficient discussion of conflicting positions on term limits to show that the Council’s overall intent was, on balance, to remedy the concentration of power rather than to punish a particular Office or to concentrate power in the Council.
Dr. Shirley asserts that the actual consequence of presidential term limits over these two decades has been to concentrate power in the Council and Speaker. While this Court can candidly say that we have observed, first-hand, numerous and complex issues concerning separation of powers in our government since the Title II *326 Amendments, Dr. Shirley has been unable to provide specific evidence supporting his claim of public harms caused specifically by the term limits provision. The causes for imbalances of governmental power are elusively broad and diverse. Without specific evidence, this Court cannot find that public harm has occurred due to a shift in concentration of power validly traceable to presidential term limits, or even that such a shift has occurred.
If in fact, as Dr. Shirley asserts, the pendulum has swung the other way and resulted in a concentration of power in the Council and Speaker these past twenty-one years, then it is for the People to exercise their reserved right to determine their structure of government and readjust these powers. See In the Matter of the Navajo Nation Election Administration’s Determination of Insufficiency Regarding Two Initiative Petitions Filed by Navajo Nation President Dr. Joe Shirley, Jr., 8 Am. Tribal Law 240, 242-244, n. 2 (Nav. Sup.Ct. 2009) (discussing the People’s fundamental and reserved right to determine their form of government).
The nationwide discord and constant discussion about governmental corruption of the times on the airwaves, in meetings and rallies, and in chapter meetings distinguishes 1989 from all other years in the history of our government. The normal lack of interest in government doings was overcome during that period. Part of the Council were trying to maintain in power Chairman McDonald and his Administration, while others were actively talking with the public, seeking to change that government. This is part of the knowledge of every Navajo who experienced that period. For this reason, this Court is willing to agree that what was said on the Council floor during the Title II deliberations regarding term limits did, in fact, have public input.
However, we hereby state that in normal circumstances, bare assertions by delegates as to what the public wants are not sufficient given the sensitivity involved in matters of legislation and the reserved right of the People to make laws, see In re Two Initiative Petitions, No. SC-CV-41-08, slip op. at 8 (Nav.Sup.Ct. July 18, 2008). The Court makes this requirement because we have noted that governmental promises have not been fulfilled and the efforts of the People in determining their government structure have been ignored. See Shirley v. Morgan, First Opinion, 9 Am. Tribal Law 46, 65 (Nav.Sup.Ct. 2010).
There is an evident need for accurateness in conveying public comments on the Council floor. Any venue at which public input is sought on governmental matters is essentially a law-making forum in which the People express their views for action by the Council. See In re Navajo Nation Election Administration’s Determination of Insufficiency Regarding Two Initiative Petitions Filed by Shirley, 8 Am. Tribal Law 240, 242, n. 2 (Nav. Sup.Ct. 2009). Public input must be treated with due respect by the Council. Delegates who assert that the public at large or in a chapter have spoken on legislation that impacts their governmental freedoms must be able to demonstrate the expressed public input whether by recordings, documents, resolutions or witnesses brought to the Council. Simply making a speech on the floor is not sufficient as evidence of public input.
b. Restriction. We must determine whether or not Section 1002(D) was intended as a consecutive-term or lifetime limit. While the Council’s use of the term “consecutive” when debating term limits for the Speaker bolsters the case that the same meaning was intended for presidential term limits, we further examine the provision’s exact phrasing for its specific meaning. Specifically, we look to the Na *327 vajo Nation’s emphasis on the holder of the Office (“President”) rather than on persons running for that office,
Not unlike the Navajo Nation provision, the Pennsylvania State Constitution emphasizes the office holder in its gubernatorial term limits provision by providing that lt[t]he Governor shall hold his office during four years from the third Tuesday of January new ensuing his election ,.. [and] shall be eligible to succeed himself for one additional term.” Penn. Const. Art. IV Sec. 3 (emphasis added). Pennsylvania’s emphasis on the incumbent officeholder is well-settled as permitting its Governors to serve no more than two consecutive terms but placing no limit on the total number of terms a person may serve in that Office. On the other hand, the presidential term limits provision in the twenty-second amendment of the U.S. Constitution places the emphasis on the person running, providing that “[n]o permit shall be elected to the office of the President more than twice ...” U.S. Const, amend. XXII. (emphasis added). This provision clearly and unambiguously sets a lifetime limit on any “person” eyeing U.S. presidential office, and this is its understood meaning.
In light of the above distinctions and the Council’s deliberations, this Court finds that 2 N.N.C. § 1002(D) imposes only consecutive term limits on the incumbent office-holder rather than a lifetime limit. In other words, the provision imposes a one-term wait period between a two-term President’s candidacy for the same Office.
IV.
Due Process and Fundamental Fairness
The Council may establish requirements for elected offices, but such requirements must conform to Diné bi beenahaz’áanii. In the Matter of the Appeal of Vern R. Lee, 6 Am. Tribal Law 788, 791 (Nav.Sup.Ct. 2006). Diñé bi beena-haz’áanii encompasses the right of the Diñé to choose leaders of their choice, id., therefore a regulation that takes the right of judging a candidates’ qualifications away from the public must not be arbitrary and must advance “a valid and substantial public interest.” Bennett, supra, at 329. Diñé bi beenahaz’áanii also encompasses a candidate’s liberty right to participate in the political system by running for office. In the Matter of the Grievance of Laverne Wagner and Concerning Leonard Tsosie, 7 Am. Tribal Law 528, 532 (Nav.Sup.Ct. 2007) citing Begay v. Navajo Election Admin., 8 Nav. R. 241, 249 n. 1, 4 Am. Tribal Law 604, 606 (Nav.Sup.Ct. 2002). Such restrictions must meet a reasonableness standard. Id. citing Rough Rock Community School v. Navajo Nation, 7 Nav. R. 168, 172-73 (Nav.Sup.Ct. 1995). Election rules may be valid if they justifiably limit candidate eligibility to allow the election system to function or further other principles of Diñé bi beenahaz’áanii Id. at 532. In addition, for equal protection purposes, a legislative classification as to eligibility to run for office must not be arbitrary and must forward “some important government interest.” Bennett v. Navajo Board of Election Supervisors, 6 Nav. R. 319, 325 (Nav.Sup. Ct.1990).
a. Liberty Rights. The intent of the Title II governmental changes was to decentralize power, establish a real check on the exercise of power, provide stability in government, and impose limitations on exercise of such powers by both the newly established Legislative and Executive Branches. CD-68-89, Whereas Clauses 2, 3 and 5. The Council sought to curb corruption that had been shown to arise through “too much centralized power” and *328 “to meet the immediate needs of the Navajo People for a more responsible and accountable government.” Id, Whereas Clause 2 and 7. These are important governmental interests. We have also said that the term limits provision sprang from the governmental crisis of the times in which the Chairman had already served three terms. See Shirley v. Morgan, supra, First Opinion at 63. Given these interests advanced and the restriction being only a one-term wait period, we find Section 1002(D) a reasonable restriction on a candidate’s liberty right to rim for office.
2 N.N.C. § 1002(D) imposes a space of one term between a former two-term President’s candidacy for that same Office. The record shows that there was public input into 2 N.N.C. § 1002(D), and the provision itself is part of the Title II Amendments, which are part of our organic laws[2] and provide the statutory foundation for principles of checks and balances, separation of powers, accountability to the People, acknowledgement of the People as the source of Navajo Nation governmental authority, and service of the anti-corruption principle. See Shirley v. Morgan, supra, Second Opinion at 7-8. The Council may not amend any portion of the Navajo Nation Code in a manner that disturbs and undermines the above stated principles. Id Unless these principles have been contravened or disturbed, the Courts will take a cautionary approach to declaring invalid any organic provision. Given the governmental interests advanced as expressed in CD-68-89, we can neither find that the one-term wait period is arbitrary nor fails to serve a valid and substantial public interest. The People themselves must decide whether or not the term limits provision as it operates today, in the absence of term limits on the Council and Speaker, is a law they wish to keep.
b. Equal Protection. The President is elected by the Navajo People at large, while the Council Delegates are selected by their respective chapters, with the Speaker selected from among the Delegates by the Delegates themselves. If one were to read only the statutory provisions, there appears to be little distinction in powers between the President and Council in external governmental dealings.[3] However, we have noted that there is a crucial distinction between their roles, as the President is the embodiment of the Nation. Id. at 45. We have also said that the term limits provision sprang from the governmental crisis of the times in which *329 the Chairman had already served three terns. Id. at 20. There are important functional differences between the branches, with the Council primarily a lawmaking body, and the Executive primarily responsible for administrative and programmatic functions. Due to these differences and lacking specific evidence otherwise, this Court must find that the President and Council Delegates are not similarly situated, and equal protection is neither implicated nor violated by the imposition of term limits on the President coupled with the absence of same on the Council and Speaker.
V.
Repeal by Diné bi beenahaz’ áanii Statute
Dr. Shirley argues that the enactment of 1 N.N.C. § 203(A), which recognized the right and freedom of the People to “choose leaders of their choice,” effectively repealed the presidential term limits provision. The provision is part of the Council’s 2002 acknowledgement of Diné bi beenahaz’áanii at 1 N.N.C. §§ 201-206 (“The Fundamental Law statute”). Dr. Shirley further argues that the later enacted statute trumps the older statute if both cannot be harmonized. However, the older provision in this ease concerns governmental structure as part of the Title II Amendments of 1989 which can be amended or repealed only by the People. See Shirley v. Morgan, supra, First Opinion at 66. In addition, the Fundamental Law statute did not create new laws, but merely acknowledged existing Diné bi beenahaz’áanii in statutory form. Finally, we have found that the People’s right to choose their leaders is not violated by 2 N.N.C. § 1002(D). We find that the Council’s recognition of the Fundamental Laws of the Dine in 2002 did not repeal the term limits provision.
In oral argument before the OHA, Mr. Todacheene had called Dine bi Beenahaz’áanii “hearsay” not to be used by the Courts because it was not written down by the Spiritual Ones and remains unwritten. We clarify that our Dine Fundamental Law is not hearsay. Rather than words repeated with neither firsthand experience nor full understanding of its meaning, Diné bi Beenahaz’áanii is the complex civilization of the Dine conveyed from generation to generation and effectively respected. It is very much living law, deeply connected to the Diñé making use of it. We note that many written laws assume the baser instinct of human beings and attempt to control it through rigid rules. Diñé bi Beenahaz’áanii assumes our higher instincts, providing broad principles of conduct and relationships that each person is expected to apply towards goals of reconciliation and hozho.
VI.
Conclusion
We HOLD that the presidential term limits provision at 2 N.N.C. § 1002(D) is valid, until the People themselves determine otherwise.

. Section 1002(A) established the Office of the President.

. See. e.g., In the Matter of Two Initiative Petitions Filed by Navajo Nation President Joe Shirley, Jr., 7 Am. Tribal Law 628, 632 (Nav. Sup.Ct. 2008) (The Court has described Title II as “organic” law for the Nation) citing Bennett v. Navajo Bd. of Election Supervisors, 6 Nav. R. 319, 323 (Nav.Sup.Ct. 1990); and see Ford Motor Co. v. Kayenta District Court, 7 Am. Tribal Law 652, 656 (Nav.Sup.Ct. 2008) (To the Navajo, the Treaty [of 1868] is the organic law); and see In the Matter of Certified Question from the United States District Court for the District of Arizona, 3 Am. Tribal Law 497, 501 (Nav.Sup.Ct. 2001) (Title II, along with the Navajo Bill of Rights, is the “organic” law); and see Shirley v. Morgan, supra, Second Opinion at 86 citing First Opinion at 60 (The Court has explicitly affirmed precedent that "there is a Navajo higher law in fundamental customs and traditions, as well as substantive rights found in the Treaty of 1868, the Navajo Nation Bill of Rights, the Judicial Reform Act of 1985, and the Title Two Amendments of 1989 ... [which are] our organic laws).

. While the President has “full authority” to represent the Nation with external governments, 2 N.N.C. § 1005(A) and (B), the Title II Amendments confer broad powers on the Intergovernmental Relations Committee, chaired by the Speaker, to coordinate with external governments and programs and “ensure the presence and voice of the Navajo Nation” independently from the President. 2 N.N.C. §§ 822 and 824(A),