# Supreme Court of the Navajo Nation

**Ronald Gishey, Appellant,**
v.
**Omer Begay, Appellee.**
**Decided March 16, 1999**

Before YAZZIE, Chief Justice, and AUSTIN, Associate Justice.

Leonard Tsosie, Esq., Window Rock, Navajo Nation (Arizona), for the
Appellant; and Steven C. Boos, Esq., Office of Legislative Counsel, Window
Rock, Navajo Nation (Arizona), for the Appellee Navajo Board of Election
Supervisors, and Lee R. Belone, Esq., Fort Defiance, Navajo Nation
(Arizona), for the Appellee Omer Begay Jr.

Opinion delivered by AUSTIN, Associate Justice.

This is an appeal of a Navajo Board of Election Supervisors' ("Board") deci-
sion to dismiss Ronald Gishey's ("Gishey") election challenge on the ground that
Gishey knew facts which he could have used to challenge Omer Begay Jr.'s
("Begay") candidacy, but he did not file a challenge within ten days of such
knowledge as required by 11 N.N.C. § 321(B) (1995 ed.). This appeal is confined
to the question of whether the Board erred in dismissing Gishey's election chal-
lenge or statement of grievance under 11 N.N.C. § 321(B), Navajo Nation
Election Code ("Election Code").

## I

The Navajo Nation general election was held on November 3, 1998. The two
candidates for Navajo Nation Council delegate from the Greasewood Springs
Chapter were Gishey, the incumbent, and Begay. Both candidates were certified
as qualified to run for the position prior to both the primary and general elections.
Begay received 274 votes and Gishey received 254 votes, a difference of 20 votes.

Gishey filed a statement of grievance with the Board on November 10, 1998,
claiming that Begay did not have a "permanent residence" within the Navajo
Nation for at least three years prior to the general election as required by 11
N.N.C. § 8(B)(10). Gishey questioned Begay's residence when Begay filed his
declaration of candidacy and he also raised it with a Navajo Election
Administration employee. However, despite the employee's indication that
Gishey could file a formal complaint, no complaint was filed.

The Board conducted a hearing on the grievance on November 12, 1998, and received evidence on Begay's residence and intended domicile or place he intended to live. A member of the Board moved to dismiss the statement of grievance for insufficiency under 11 N.N.C. § 321(B) (1), and the Board granted the motion by a vote of seven in favor and none opposed. While the transcript of the Board proceedings is on file for this appeal, we do not have the Board's findings of fact and conclusions of law, because the grievance was decided on a procedural ground.

## II

The essence of the Board's legal justification for its action is contained in paragraph five of the preamble to Resolution No. BOESN-196-98, which states as follows:

> If a candidate knows of an Election Code violation before an election, he or she must take action within ten days of such incident rather than waiting until after the election. *Haskie v. Navajo Board of Election Supervisors*, 6 Nav. R. 336 (1991). The time for filing a complaint against a candidate based on his qualifications is within ten days of the filing of the nomination petition. See 11 N.N.C. Sec. 321(B)(1). That time has elapsed and the Statement of Grievance is therefore untimely.

Navajo Board of Election Supervisors Res. No. BOESN-196-98 (November 25, 1998). This appeal is on a question of law — whether the Board's conclusion of law is correct. We will first look at the Navajo Nation Council's commands in the statute and then discuss our prior decision in *Haskie v. Navajo Board of Election Supervisors*, 6 Nav. R. 336 (1991).

The statute simply states that a candidate for the office of delegate to the Navajo Nation Council "[m]ust have permanent residence and been continually, physically present within the Navajo Nation as defined in 7 N.N.C. § 254 at least three years prior to the time of election." 11 N.N.C. § 8(B)(10). The statute means that a candidate must (1) permanently reside within and (2) be continuously present within the Navajo Nation (3) for at least three years (4) prior to the time the candidate is elected. The Election Code defines "permanent residence" as: "The place where a person physically lives with the intent to remain for an indefinite period of time. The permanent residence is a person's fixed and permanent home. Permanent means lasting, fixed, stable and not temporary, part-time, or transient. A person cannot have more than one permanent residence at the same time." 11 N.N.C. § 2(Z). "Continually present" is defined as: "Being actually physically present within the Navajo Nation or living on Navajo Country in a fixed and permanent home without any significant interruption. An extended absence from Navajo Country in the course of employment or pursuit

of a trade or business or for purposes as attending school and serving in the military service, is not significant interruption."[1] 11 N.N.C. § 2(G).

The Election Code provision that grants the Board power to resolve disputes, and which the parties ask us to construe, provides as follows:

> Within ten days of the incident complained of or the election, the complaining person must file with the Board a written complaint setting forth the reasons why he or she believes the Election Code has not been complied with. If, on its face, the complaint is insufficient under the Election Code, the complaint shall be dismissed by the Board of Election Supervisors.

11 N.N.C. § 321(B)(1). On this provision, Gishey underscores the word "or," contending that he had the option of filing a complaint either within ten days of having a question about his opponent's qualifications "or" within ten days of the election. The Board underscores the "ten days of the incident complained of" language. While the statute is stated in the alternative, so that it appears that a challenge can be brought either within ten days of having knowledge of a defect in an opponent's candidacy or within ten days after the election, we believe our decision in *Haskie*, 6 Nav. R. 336, sheds more light on the issue.

It is important to understand the context in which the *Haskie, id.*, decision was rendered. Prior to October 24, 1990, the Board had certified Peterson Zah and Peter MacDonald Sr. to run for the office of president, and both were finalists following the primary election. Appellant Haskie received the third highest vote in the primary. Because Peter MacDonald Sr. was convicted on criminal charges of bribery, kickback, and violations of the Navajo Ethics in Government Law on October 22, 1990, the Board revoked his certification as a candidate two days later. On April 26, 1990, the Board used its statutory authority to adopt rules to address write-in votes. *Haskie, id.* at 336-337.

MacDonald had selected George P. Lee as his vice-president for the election. When MacDonald was decertified as a candidate, Lee declared his intent to run for president as a write-in candidate. Given the change in circumstances, the Board decided to allow Haskie to run as a regular candidate on the ballot and then allowed Lee to campaign as a write-in candidate. *Haskie, id.* at 337. Haskie challenged the election results and the Board dismissed the challenge on the ground, among other things, that his representative had been present at a December 4, 1990 Board meeting and that he should have filed a challenge within ten days from when the Board permitted Lee to run as a write-in candidate. *Haskie, id.* at 339. We affirmed the Board's interpretation of its own law; namely, the section of the Election Code involved here, 11 N.N.C. § 321(B)(1). *Haskie, id.* at 340. However, it is important to further discuss the election law principles we applied there.

We adopted the general election law, and reaffirm it today, that election statutes are mandatory when enforcement is sought prior to an election, but they

---

1. We reserve for a later day the issue of whether the Navajo common law interpretations of "residence" cited by the Board apply to this provision of the Election Code.

are directory when enforcement is sought after an election. *Haskie, id.* at 338 (citing *Johnson v. June*, 4 Nav. R. 79, 81 (1983)). This law encourages candidates to bring their challenges prior to an election, and it presumes that elections which have been held are valid. Thus, Haskie had to show that the election errors obstructed a free and intelligent vote, obstructed ascertainment of the results of the election, denied an essential element required for a valid election, or otherwise voided the election. *Haskie, id.* at 338-339.

Moreover, we adopted the federal civil rights rule that "aggravating factors," including "racial discrimination, fraudulent interference with a free election by ballot-box stuffing, or other unlawful conduct which interferes with the individual's right to vote" deny due process of law. *Haskie, id.* at 340. To establish such a claim, a challenger must establish "'patent and fundamental unfairness' in the election process, 'purposeful deprivation' of clear rights, or 'intentional wrongful acts'" to void an election. *Haskie, id.*

A review of the record shows that Gishey raised a claim that Begay made a fraudulent statement regarding his "permanent residence" in his application for candidacy and that he continued his misrepresentations throughout the election. The record raises questions of whether Begay intended to live in Canada; whether he in fact had a permanent residence within the Navajo Nation since August 25, 1995 (three years prior to the primary elections); and whether he deceived the Board and public. These questions bear directly on the issue of whether the voting process was tainted by intentional wrongful acts.

We distinguish this case from *Haskie* on another ground. In *Haskie*, there was an identifiable point or "incident complained of" which we said should have prompted a challenge. Here, should Gishey have challenged Begay's qualifications when Begay was certified? Residence is a difficult legal concept, and we hesitate to affirm a ruling that requires challenging residence questions within ten days of certification using statements in an application for candidacy when it may be difficult to obtain the facts. We cannot permit potential candidates to make statements in public documents where they have almost exclusive knowledge of the facts and then escape the consequences of their declaration by a failure to contest it within ten days.

## III

We decline to rule on the merits of this case. While we are permitted to review the Board's record to see if its decision is "sustained by sufficient evidence on the record," 11 N.N.C. § 321(B)(4), the Board did not make any findings of fact on the merits. Principles of separation of powers also compel us to withhold a decision on the merits. On the issue of our review of the applicable law, as we noted in *Haskie, id.* at 340, we normally defer to the Board when it interprets its

---

2. The Appellant seems to assume that residence must be in the Greasewood Springs Chapter, but the statute says "the Navajo Nation." See 11 N.N.C. § 8(B) (10).

own statutes. However, there is a patent problem with this case. This is not a situation where a candidate contests procedures or conduct which may or may not have swayed twenty votes. It is one where the basic qualifications of a candidate are called into question and one where the prevailing candidate may not have been qualified to run for the Navajo Nation Council under the Election Code.

## IV

We also decline to address the due process claims questioning the fairness of the hearing before the Board. Sometimes parties attempt to infuse facts into an appeal which are not present in the record. This is one such case. We do not have sufficient facts before us to rule on whether attorney advisors improperly swayed the Board's judgment or whether its members prejudged the case or ignored the evidence. That can be tested on the record should this matter come before us again.

It does seem strange that the Board reviewed the grievance at a special meeting held on November 12, 1998, and then proceeded to a hearing on the merits on November 25, 1998. The Board could have reviewed the grievance for legal sufficiency at the first meeting. The Election Code gives the Board the authority to first review the complaint for sufficiency, and if the complaint is not dismissed, the Board must proceed to a hearing to see if the allegations are true and supported by the law. 11 N.N.C. § 321(B)(2); see also *Mustache v. Navajo Board of Election Supervisors*, 5 Nav. R. 115, 117-118 (1987) (construing a similar statute setting forth procedures for resolving election disputes). It is likely that the Board ordered the preparation of a resolution dismissing the complaint prior to the hearing on the merits and wanted to hear the merits of the case before deciding the procedural question. If that happened then the Board violated 11 N.N.C. § 321(B), but we do not reverse on that technicality.

While Gishey's due process contentions should have been raised in objections on the record below or in an appropriate application for an extraordinary writ, we observe that Navajo Nation boards, commissions, and committees should carefully avoid appearances of impropriety so that hopefully we will not have to decide due process questions in the future.

## V

We reverse the November 25, 1998 decision of the Navajo Board of Election Supervisors dismissing Gishey's statement of grievance. On remand, the Board shall make findings of fact, conclusions of law, and a decision on the merits.