*Leland KESOLI*
Petitioner-Appellee
*vs.*
*ANDERSON SECURITY AGENCY*
Respondent-Appellant

In the Supreme Court of the Navajo Nation

**No. SC-CV-01-05**

October 12, 2005

726

David Jordan, Gallup, New Mexico, for Appellant.

Nellie Y. Sloan, Tuba City, Navajo Nation, and Loretta Danzuka, Shiprock, Navajo Nation, for Appellee.

Before YAZZIE, Chief Justice, and FERGUSON and NESWOOD, Associate Justices.

A security company supervisor shouted at his subordinates and was terminated by his employer. We conclude that, under the circumstances, the supervisor's conduct constitutes "harassment," and therefore "just cause" for termination. We therefore reverse the Navajo Nation Labor Commission (Commission).

I

Appellee Leland Kesoli (Kesoli), a Sergeant Security Guard for Appellant Anderson Security (Anderson), supervised other security guards. At least three of these guards complained to Anderson that Kesoli had shouted at them.[1] Kesoli testified before the Commission that he confronted the guards in an attempt to quell rumors of an illicit affair circulating among female guards, and that these confrontations escalated into shouting incidents. Based on these complaints, Anderson conducted an investigation, and then terminated Kesoli. Anderson's stated reason for terminating Kesoli was that he had engaged in unprofessional behavior.

Kesoli filed a complaint with the Commission, which ruled in his favor. The Commission reviewed the evidence, and concluded that complaints filed by several employees were deserving of little weight, and that Kesoli was not terminated for "just cause."[2] This appeal followed.

This Court held oral argument on August 30, 2005. At oral argument, Kesoli's counsel conceded that Kesoli did shout at employees whom he supervised, and that such conduct was improper.

II

The issue in this case is whether there is "harassment" and therefore "just cause" for termination when a supervisor shouts at an employee whom he supervises.

---

[1] The record contains a total of six complaints from fellow security guard and one client complaint from a supervisor of the plant for which Anderson provided security services and who witnessed Kesoli shouting at a security guard over the phone.

[2] The Commission based it ruling on the following conclusions: (1) only one of the complaints was written on the "5 x 5" complaint form provided by Anderson, and that this form was the only one with a "date received" stamp, which caused the Commission to question whether the five undated complaints were ever considered in the termination decision; (2) a report of the investigation was not done by Anderson, and/or the report was not presented as evidence; and (3) none of the guards testified to corroborate the written complaints.

## III

We review decisions of the Commission under an "abuse of discretion" standard. *Smith v. Navajo Nation Department of Headstart*, 8 Nav. R. 709, 714 (Nav. Sup. Ct. 2005). One type of abuse is an error of law. *Id.* The meaning of "just cause" under the Navajo Preference in Employment Act (NPEA) is a legal conclusion which we review *de novo*, with no deference given to the Labor Commission. *Id.*

Generally our review of the factual findings of the Commission is more deferential. An abuse of discretion occurs in the factual context when a finding is not supported by "substantial evidence." *Jackson v. BHP Minerals*, 8 Nav. R. 560, 568 (Nav. Sup. Ct. 2004). This Court will find that a decision is "supported by substantial evidence" where, after examining the relevant evidence, a "reasonable mind could accept [the evidence] as adequate to support the conclusion, even if it is possible to draw two inconsistent conclusions from the evidence." *Id.*

Though deference on factual findings is the general rule, this Court cannot defer to the Commission in this case. Though the decision includes some discussion of alleged evidentiary flaws in Appellant's case, as mentioned above, it makes no clear findings of fact that support the Commission's conclusions of law. It is unclear exactly what the Commission believes occurred between Appellee and his co-workers, except that it concluded Kesoli's actions did not justify his termination.[3] In fact, the Commission considered "justification" offered by Kesoli for his conduct.[4] However, the perplexing nature of the various statements of the Commission and the rationale used requires us to review the case based on the record presented by the parties, and not on findings of the Commission.

## IV

The issue in this case, like all NPEA termination cases, is whether the conduct of the employee is "just cause" for termination. This Court recently stated that "just cause" cannot be defined through one test, but is dependent on the unique circumstances of each case. *See Smith*, 8 Nav. R. at 714. In *Smith* the Court interpreted "just cause" in the context of a clear rule in a personnel manual defining conduct. *See id.* There is no manual in the record to provide guidance. The Court therefore must review the case to decide generally whether Kesoli's

3 In one part of the decision the Commission appears to believe that Kesoli did shout at his co-worker, but that termination in the context of his work record was "extreme." In other parts of the decision it appears the Commission did not believe there was enough evidence to show that Kesoli shouted.

4 The decision notes that Kesoli stated that he shouted because he was shouted at by the female guards, that, except for one prior incident in a career running over 23 years as a guard, Kesoli had an unblemished record, and that, according to the Commission, Kesoli's immediate supervisor allowed "things to get out of hand" because the supervisor did not do anything to control the situation arising from the destructive rumors and the resultant animosity.

actions were improper under the circumstances of his employment such that termination was appropriate.

This case also concerns another term used in the NPEA: "harassment." Anderson argues that Kesoli's shouting constituted "harassment" as that term is used in the NPEA. The NPEA requires an employer to "maintain a safe and clean working environment and provide employment conditions which are free of prejudice, intimidation and harassment." 15 N.N.C. § 604(b)(9) (1995) (emphasis added) Anderson contends that this provision requires employers to prevent "harassment" in the workplace, and that it therefore had to terminate Kesoli or else face potential litigation from other employees for failing to fulfill this obligation. Like "just cause" and "adverse action," both key terms in the NPEA, "harassment" is not defined. *See Smith*, 8 Nav. R. 709, 714 n. 1 (noting need for guidance by Navajo Nation Council on meaning of "just cause"). Anderson suggests a definition of "harassment" as a broad term encompassing "all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment." Brief of the Appellant at 11.

The meaning of "harassment" is relevant to this case because it informs our definition of "just cause." Like a contract, the Court reads provisions of a statute comprehensively to further the purposes of the law, making sense of all statutory requirements and avoiding, whenever possible, the invalidation of any provisions. *See Office of Navajo Labor Relations ex rel Bailon v. Central Consolidated School Dist. No. 22*, 8 Nav. R. 501, 505–06 (Nav. Sup. Ct. 2004) (applying rule of contract interpretation that all provisions must be given force and effect); *Blaze Construction, Inc. v. Navajo Tax Comm.*, 7 Nav. Sup. Ct. 435, 439 (Nav. Sup. Ct. 1999) ("We interpret a contract by reading it as a whole and in its entirety."). Pursuant to this rule of statutory construction, the Court concludes that "harassment" under the NPEA constitutes "just cause." Therefore, if Kesoli's actions were "harassment" there was "just cause" under the circumstances in this case to terminate him.

To counter Anderson's characterization of his shouting as "harassment," Kesoli makes various arguments, including that he has a naturally loud voice, that he was upset about rumors circulating among the employees about him, and that *k'é* requires that Anderson engage in progressive discipline. However, in testimony before the Commission he admitted to shouting. More importantly, Kesoli's counsel at oral argument conceded after questioning that his conduct was improper in the context of his supervisory position.

Under the circumstances, the Court concludes that there was "just cause" to terminate Kesoli because his conduct was "harassment." In the specific context of his position as a supervisor, it was wholly inappropriate to shout at a subordinate, regardless of any purported rumors. To maintain a harmonious work place, employers must prevent hostile activity, especially from a

supervisor. Lacking any guidance in the NPEA, the Court adopts Anderson's suggested definition of "harassment" as consistent with the policies of the statute and *Diné bi beenahaz'áanii*. *See Sells v. Rough Rock Community School*, 8 Nav. R. 643, 648 (Nav. Sup. Ct. 2005) (defining "adverse action" consistent with NPEA and Navajo Common Law). In the context of this case, the Court concludes that Kesoli's shouting was "harassment." Words are sacred and never frivolous in Navajo thinking, *see Smith*, 8 Nav. R. at 715, and are not to be used to offend or intimidate, particularly in Kesoli's position of supervisor, which, in the context of Navajo thinking makes him a *naat'áanii*. *See Goldtooth v. Naa Tsis' Áán Community School, Inc*, 8 Nav. R. 680, 692 (Nav. Sup. Ct. 2005) (identifying executive director of school as *naat'áanii*). As a *naat'áanii* he had a responsibility to conduct himself thoughtfully and carefully with respect for his employees under the principle of *házhó'ógo*, *see Navajo Nation v. Rodriguez*, 8 Nav. R. 604, 615 (Nav. Sup. Ct. 2004) (discussing principle of *házhó'ógo* in context of right against self-incrimination), including utilizing the *k'é* mechanisms Anderson provides to deal with disputes among employees. By shouting at employees he supervised, Kesoli did not conduct himself thoughtfully and carefully. There was therefore "just cause" to terminate him, and no requirement to engage in progressive discipline.

V

Based on the above we hereby VACATE the Labor Commission's decision and dismiss the complaint.

