OPINION ON RECONSIDERATION

This case concerns an appeal of the Office of Hearings and Appeals’ (OHA) dismissal of a post-election challenge to the qualifications of the winning candidate in a school board election matter. In an opinion issued on December 18, 2012, we reversed the OHA. Subsequently, the Real Party in Interest (RPI) submitted a timely request for reconsideration. The Court now issues its opinion addressing the issues raised by the RPI.
I
The following facts are not in dispute. At the time he filed his candidacy application on May 30, 2012, the RPI was an employee of the Shiprock Associated Schools, Inc. (SASI), serving as Executive Director. On May 14, 2012, SASI placed the RPI on paid administrative leave. On May 30, 2012, the RPI filed his candidacy papers for SASI school board member. On July 20, 2012, the RPI submitted his resignation and on August 13, 2012, SASI accepted the resignation. On November 6, 2012, the RPI was elected as school board member, defeating the only other candidate, Appellant Mae Y. Sandoval.
On November 15, 2012, within the post-election statutory challenge period of 10 days, Appellant filed a Statement of Grievance with the OHA pursuant to 11 N.N.C. § 341 alleging “the Navajo Nation Election Administration Office has wrongfully certified Dr. Leo Johnson, Jr., as a school board candidate while he was still an employee of that organization,” in violation of 11 N.N.C. § 8(D)(4)(e) that states a candidate or spouse of candidate must not be an employee of the school on whose board he or she would serve. Statement of Grievance, p. 1. RPI claims that he was not provided notice that this grievance was filed. The OHA accepted the grievance and on November 27, 2012, without a hearing, the OHA entered Findings of Fact, Conclusions of Law and Final Order (Final Order) dismissing Appellant’s grievance solely on the ground that 11 N.N.C. § 6(E) (as amended by Council Resolution No. CMY-38-12, effective July 6, 2012) was not yet in force at the time the RPI submitted his candidacy qualifications documents and, therefore could not be applied retroactively to the RPI. Amended Section 6(E), which prohibits any employee of a school board within the last five years from running as a candidate for school *115 board member, was not referred to by the Appellant in her grievance. This appeal followed. On December 18, 2012, this Court issued an expedited opinion reversing the OHA and invalidating the election on the basis that a candidate must meet the Section 8(D)(4)(e) employment-based qualification at the time he/she files the required written statement swearing that he/she meets all the qualifications as required by law.
On January 10, 2013, the RPI requested reconsideration on the following bases: that due process was denied him in the underlying grievance and this appeal; that Appellant’s postelection challenge of his candidacy is barred as untimely per 11 N.N.C. § 24; and the employment-based qualification of 11 N.N.C. § 8(D)(4)(e) being without a qualifying time element must be read, for equal protection reasons, as applicable upon oath, not at the time of filing. The RPI has not taken any oath of office pending this appeal. After confirming that the RPI had not received notice, this Court ordered briefs to address all issues raised by RPI. All briefs having been received, we now issue our opinion.
II
We address the following issues: (1) whether dismissal is required when an RPI lacks notice of the filing of an election grievance and its subsequent appeal; (2) whether 11 N.N.C. § 8(D)(4)(e) applies upon filing candidacy papers or at the time of oath; (3) whether 11 N.N.C. § 6(E), as amended, applied to the RPI in the run-up to the 2012 chapter elections; and (4) whether a post-election challenge to RPI’s qualifications is untimely in view of Haskie v. Navajo Board of Elections, 6 Nav. R. 336 (Nav.Sup.Ct. 1991).
III
The Court’s standard of review of OHA’s decision is set by statute. Review is limited to “whether or not the decision of the Office of Hearings and Appeals is sustained by sufficient evidence on the record.” 11 N.N.C. §§ 24(G), 341 (2005). Though the provision emphasizes the sufficiency of the evidence, dearly a decision based on an erroneous interpretation of the law cannot be sustained by sufficient evidence. The Court therefore has the authority to examine the underlying legal interpretation, and can reverse an OHA decision if the law OHA relies on is not valid. In re Appeal of Vern R. Lee, 6 Am. Tribal Law 788, 789-90 (Nav.Sup.Ct.2006) citing Begay v. Navajo Nation Election, Admin. (NEA), 8 Nav. R. 241, 250, 4 Am. Tribal Law 604 (Nav.Sup.Ct.2002). When addressing the legal interpretations of administrative bodies, this Court applies a de novo standard of review. Todacheenie v. Shirley, No. SC-CV-37-10, slip op. at 3 (Nav.Sup.Ct. July 30, 2010) citing, inter alia, Begay v. NEA at 250, 4 Am. Tribal Law 604. Additionally, where there are allegations of violations of due process, this Court “is not limited by the scope of review set forth in [11 N.N.C. § 341].” Begay v. NEA at 250, 4 Am. Tribal Law 604 citing Morris v. Navajo Board of Election Supervisors, Nav. R. 75, 78 (Nav.Sup. Ct. 1993).
IV
The Court previously decided this matter on an expedited basis in order that an opinion could be issued prior to the oath-taking of all candidates elected in the 2012 chapter elections, which took place on November 6, 2012. In Navajo thinking, the selection of a person by voters is only one of several requirements for a candidate to become a naat’ánii. That person must take the standard oath approved by the Board of Election Supervisors (Board) to obey and implement the laws of the sover *116 eign government within whose system he or she will serve the people—“naat’anii (idee hadidziih.” In re Grievance of Wagner, 7 Am. Tribal Law 528, 532-33 (Nav.Sup.Ct.2007) citing In re Appeal of Lee, 6 Am. Tribal Law at 792-93. School board members swear to “preserve, protect and defend the laws and government of the Navajo Nation and advance the interests of the Navajo people, having due regard for the ethical duties and responsibilities of the office.” Resolution No. BOESS-027-07 (Navajo Board of Election Supervisors, September 13, 2007). The Diné people will keep that elected official to his or her words. See id., citing Kisoli v. Anderson Security Agency, 8 Nav. R. 724, 6 Am. Tribal Law 692 (Nav.Sup.Ct.2005) (“Words are sacred and never frivolous in Navajo thinking”). The oath is absolute and sacred. Id. Additionally, Navajo culture is forward-looking and it is never preferable to unwind events that have already occurred. It is for these reasons that this Court hurried to issue its initial decision before the oath of office was administered.
While the Court previously addressed only 11 N.N.C. § 8(D)(4)(e), we now expand our inquiry to address equal protection and due process issues raised by the RPI. We also address the OHA’s decision that amended 11 N.N.C. § 6(E) is not retroactive, as the RPI has called our attention to the entirety of the OHA’s summary dismissal. Additionally, the submitted briefs show that clarification from this Court is needed regarding the effective date of this amendment. By including amended Section 6(E) in our inquiry, the bases for challenges and remedies are both expanded.
We first address the RPI’s claim of denial of due process when notice was not provided to him upon Appellant’s filing of the grievance to the OHA. Pursuant to 11 N.N.C. § 24, a candidate is expressly entitled to hearing notice if a sworn challenge to his/her certified application is filed within 10 days of the NEA’s certification and deemed by the OHA to be sufficient on its face. For all other challenges made pursuant to 11 N.N.C. § 341, including those made after the NEA’s certification is final, the Election Code is silent as to whether the candidate is entitled to any notice. Even though it is the NEA’s actions that are being grieved, the Rules and Regulations of Examining the Qualifications of Applicants for Candidacy for Public Elective Office provide, for due process purposes, that candidates “shall be afforded written notice therefor, and opportunity for hearing ...” but only upon denial of their candidacy. Resolution No. BOESD-030-05, Exhibit “A,” Rule 3(B)(Navajo Board of Election Supervisors, December 8, 2005). It is clear that the Election Code requires the hearing notice to be given to candidates only within the 10-day challenge period, and that the rules provide hearing notice only if candidacy is denied no matter when a challenge is filed. Both these requirements recognize the RPI’s substantial interest in the outcome. In this case, Appellant filed a post-election challenge. The OHA is authorized by Section 341 to dismiss a grievance without notice solely on the basis of insufficiency of the complaint, otherwise the OHA is duty-bound pursuant to Section 341(A)(2) to bring the grievance swiftly to hearing after providing necessary notices. The record shows that the OHA accepted the post-election grievance under Section 341 and did not find the complaint insufficient. The OHA then proceeded to summarily dismiss the grievance on a point of law, without a hearing. The OHA erred in doing so as dismissal in this case without a hearing, on a basis other than insufficiency, is not permitted by any statute. However, the question here is whether the error resulted in denying the RPI his due *117 process rights sufficient to justify a reversal or new hearing.
The record shows that the OHA’s dismissal without notice or hearing neither damaged nor prejudiced the RPI. On the contrary, the dismissal resulted in a decision entirely favorable to the RPI, namely, elimination of the challenge to his election. As his challenge was not pursued under 11 N.N.C. § 24 and as his candidacy was not denied under the above rules, the RPI was not entitled to notice or hearing under the circumstances. All facts relevant to his employment are undisputed, and the RPI argues for a hearing solely for the OHA to hear evidence on when the Appellant actually learned of the RPI’s employment status, which he believes is relevant to resolve the challenger’s due diligence pursuant to Haskie, supra. However, as explained later in this opinion, the expansion of our inquiry to include amended 11 N.N.C. § 6(E) brings this matter squarely under a scheme of detailed statutory provisions specific to school board members that supplants Haskie in this case. Therefore, we find the OHA’s failure to fully comply with 11 N.N.C. § 341(A)(2) with respect to the RPI did not deny the RPI’s due process rights and cannot serve as a basis for reversing the OHA and/or requiring an OHA hearing.
RPI further argues that his lack of notice of the filing of this appeal requires dismissal. N.R.C.A.P., Rule 4(b) requires service on “parties.” Pursuant to 11 N.N.C. § 2(D), all election grievances are limited to challenges to the procedures of an election as conducted by the NEA, or to the signatures on a nominating petition which, by necessity, are certified by the NEA. As it is the procedural conduct of the NEA that is being challenged in election cases, it is the NEA that is the party primarily responsible to defend its decisions and procedures before this Court. Therefore, an election appeal to this Court is properly commenced pursuant to N.R.C.A.P., Rule 4(b) when the NEA is served with the Notice of Appeal. The candidate whose eligibility is being challenged, or the registered voter whose signature is being challenged, is the real party in interest. The Notice of Appeal should disclose the name or names of the RPI unless, as in challenges to voter signatures, specific names may be too numerous to include. Any RPI must be afforded an opportunity to appear and to oppose the challenge. In this case, the RPI brought his lack of notice of the filing to our attention within the period of reconsideration, at which this Court reopened the appeal and requested briefs from the parties and the RPI on issues raised by the RPI and provided the RPI a full opportunity to be heard. The opportunity is not to be confused with improper commencement of an appeal for lack of service to a party, which would require dismissal. In this case, dismissal is not required.
The basis for Appellant’s grievance was 11 N.N.C. § 8(D)(4)(e), pursuant to which she asserted that the RPI’s employment status at the time of his sworn statement made him ineligible to run. Specifically, Section 8(D)(4)(e) provides:
[Candidate] [m]ust not be an employee or the spouse of an employee of the School on whose board he or she would serve.
Section 8(D)(4)(e) was enacted in 1990 as part of a comprehensive candidate qualifications statute for all Navajo Nation elected positions at 11 N.N.C. § 8 (qualifications statute). Section 8 has not been repealed and remains the qualifications statute to this day as supplemented by amended 11 N.N.C. § 6(E). Section 8(D)(4)(e) was amended in 2003 to also prohibit spouses of school board employees from running for school board positions. *118 The qualifications statute, arranged by elective position category, sets forth, in great specificity, detailed conditions concerning tribal membership, employment status, past convictions, residency, age, education, and culture and language skills among others. Pursuant to 11 N.N.C. § 21(B), all candidates intending to run for specific Navajo Nation elected positions must swear at the time their candidacy applications are filed, in writing, that they meet each and every qualification as set forth in the qualifications statute that are relevant to the position for which they intended to run.[1] Pursuant to 11 N.N.C. § 23(A), the NEA is then required to certify a candidate’s eligibility on the sole basis of the candidate’s attestation in the sworn statement. The candidate is fully aware of the importance of his/her attestation, as pursuant to Section 21(B)(2)(d), the sworn statement must also contain the candidate’s acknowledgement “that he or she may be removed as a candidate in the event his or her application contains a false statement.”
Because it lacks a time element that might delay its application to a later event, such as election or oath, 11 N.N.C. § 8(D)(4)(e) is a qualification that, if read by its plain wording, immediately applies upon the sworn statement. However, the RPI has asked this Court to consider the absence of a time element in Section 8(D)(4)(e) as a mistake. The RPI argues that employment status qualifications for other Navajo Nation elected positions all contain the time element of “if elected,” and, therefore, Section 8(D)(4)(e) must be read as containing the same time element for equal protection reasons. We disagree. Firstly, the Rules and Regulations of Applicants for Candidacy for Public Elective Office require, for equal protection purposes, that candidates “shall be treated fairly and equally as other applicants for the same position.” Resolution No. BOESD-D30-05, Exhibit “A,” Rule 3(A)(emphasis added). As we describe below, the Council uniquely tailored qualifications for school board positions, and frequently amended the qualifications over the past two decades in order to impose conditions on school board officials that are far more stringent than any other elective Navajo Nation position. In 2003, the Council practically rewrote Section 8(D) pertaining to school boards, requiring inter alia, a lifetime ban on those with any felony and certain misdemeanor convictions pertaining to deceit, violence, child abuse or neglect, and alcohol abuse, from running for school board office while only going back five years for other positions. Resolution No. CJY-41-03 (July 24, 2003). Section 8(D)(4)(e) was also amended to ban spouses of current school board employees from running as school board candidates, a prohibition that does not exist for other positions. Id. School board members are also subject to automatic forfeiture by operation of law for missing three consecutive meetings, a measure not applied to any other elected position. 11 N.N.C, § 142 (as amended, October 17, 2007). As addressed later in this opinion, in 2012 the Council banned anyone who has been a school board employee within the past five years from running in order “to prevent conflict of [sic] retaliation.” 11 N.N.C. § 6(E)(as amended). Finally, pursuant to Section 8(D)(4)(j), school board members are statutorily required to maintain their qualifications throughout their term of service. Neither of these last two conditions is expressly required of any other elected position. Because it is clear that the *119 Council has treated school board members uniquely from other positions in almost every qualification, we reject the RPI’s equal treatment argument.
It is a basic principle that the plain meaning of enacted statutes must be presumed as the Council’s proper and legal intent unless there is evidence otherwise. See Judy v. White, 8 Nav. R. 510, 528, 5 Am. Tribal Law 418 (Nav.Sup.Ct.2004). There is no such evidence in this case. Furthermore, where a provision is part of a larger scheme, the -whole of that scheme necessarily figures in the interpretation of that provision. NHA v. Johns, 11 Am. Tribal Law 31, 38-39 (Nav.Sup.Ct.2012). In this case, we find that a literal reading of 11 N.N.C. § 8(D)(4)(e) is proper and in keeping with the statutory scheme of school board qualifications.
We take judicial notice that school board members occupy a unique position among Navajo Nation elected positions in that officials, teachers, families, clans and communities are all personally invested in the education and future of our children to the extent of becoming embroiled in conflict. As the Council has stated, “[t]he Navajo People have demonstrated a willingness and a desire to have greater participation in local school affairs” specifically concerning local school boards. Resolution No. CAU-87-69 (August 8, 1969). It must also be emphasized that “our children occupy a space in Navajo culture that can be described as holy and sacred.” See EXC v. Jensen, No. SC-CV-07-10 slip op. at 18 (Nav.Sup.Ct. September 10, 2010). The Council has stated that the Navajo Nation stands in parens patriae of the children within its jurisdiction. See Álchíní Bi Beehaz’áannii Act of 2011, Resolution No. CO-38-11, Section 2, ¶ 1. The Council has concluded that the Navajo Nation schools are in crisis, which results in conflict that is not present in any other governmental area. The legislative history of the enactment of the 2003 automatic forfeiture provision, in particular, shows the Council viewed endemic dysfunction in our school boards as requiring the singling out of school board members for expedited, unusual treatment. Minutes of the October 17, 2007 Council session discussing enactment of Resolution No. CO-39-07 (October 17, 2007). We have stated:
While the right or privilege of placing one’s name in nomination for public elective office is a part of political liberty, thus making it a due process right, that liberty may be restricted by statute. Any such restriction must be reasonable and forward some important governmental interest.
Bennett v. Navajo Board, of Election Supervisors, 6 Nav. R. 319, 325 (Nav.Sup.Ct.1990).
So long as there is a reasonable basis for the restriction and an important governmental interest is advanced, in this case the protection and welfare of our children in the area of education, this Court will presume that the Council will not enact legislation which would deny civil rights. See In re Certified Question from the U.S. District Court for the Dist. of Arizona, 8 Nav. R. 132, 134-137, 3 Am. Tribal Law 497 (Nav.Sup.Ct.2001). No evidence or argument, in this case, has been offered questioning the reasonableness of the Council’s scheme in regards to school board qualifications. Therefore, we will consider the legislation “proper and legal.” See Judy v. White, 8 Nav. R. at 528, 5 Am. Tribal Law 418.
The RPI states that he relied on a personal interpretation of 11 N.N.C. § 8(D)(4)(e) provided to him by the Director of the NEA that the provision should be read as applying only upon the time of oath. While the NEA Director has *120 independent power to certify candidates’ qualifications pursuant to 2 N.N.C. § 877(A)(12), for all intents and purposes, certification is a perfunctory function requiring no interpretation of laws. If there is no challenge, the NEA Director must certify the candidate’s filings “on the face of the candidate’s application” pursuant to 11 N.N.C. § 23(A). If there is a need to interpret the Election Code, it is the Board’s responsibility to do so pursuant to 2 N.N.C. § 873(B), which authorizes the Board to administer, implement, enforce and interpret the Election Code. The NEA Director’s personal interpretation of an election law is not to be construed as the official interpretation of the Board as an administrative body. The NEA Director’s personal statements carry no authority under the law.
We next address the OHA’s finding that amended 11 N.N.C. § 6(E) is not applicable to the RPI because it may not be retroactively applied. We had declined to address the OHA’s reasoning because amended Section 6(E) was not part of Appellant’s grievance. We are now asked to examine the OHA’s processes and reasoning fully in our reconsidered opinion.
11 N.N.C. § 6(E) was amended in the run up to the November 6, 2012 election some five weeks after the candidates’ filing and four months prior to the election itself, becoming effective on July 6, 2012. While it is correct that laws generally may not be retroactively applied, the issue in this case is not the retroactive application of amended Section 6(E) back to the date of the candidates’ filing, but rather, the forward application of this law to an election that has not yet occurred.
Candidates have a “Fundamental Law right to participate in the political system by running for office.” In re Grievance of Wagner, 7 Am. Tribal Law at 532 citing Begay v. NEA at 249, 4 Am. Tribal Law 604. However, as we stated in In re Appeal of Lee, supra, this right is not absolute, and may be reasonably regulated when necessary for the election system to function or when required by another Fundamental Law principle. Id,., 6 Am. Tribal Law at 792. A change in qualifications that is enacted by the Council for sound public policy reasons well prior to election is one such reasonable regulation. No provision of the Election Code prohibits a forward application of such changes four months before the election itself has taken place.
Pursuant to 11 N.N.C. § 23, the NEA certifies all candidates’ qualifications upon the candidates’ attestation of eligibility to run. While the Election Code does not specifically provide a procedure for the NEA to respond to a change in candidate qualifications during the run up to an election, we note that the NEA has been well able to respond in a previous situation. In Haskie, supra, Peter MacDonald had been certified as eligible to run as President of the Navajo Nation but subsequently became disqualified during the run up to the election due to a felony conviction. When that occurred, the Board proactively disqualified MacDonald and permitted Haskie to run as a regular candidate, since Haskie had had the third highest votes in the primary. The Board also permitted a write-in candidate in addition to Haskie.[2] Haskie at 338.
In this case, it was incumbent on the NEA to require an updated sworn *121 statement from all school board candidates upon the change in the qualifications law, and incumbent on RPI as a naat’ámi, to reassess his candidacy in view of the new legislation. That the RPI did run, due in large part to the inaction of NEA in implementing its responsibilities does not cure the defect, and in the view of this Court, creates the untenable situation where the inaction of a governmental agency as well as the candidate has caused an unqualified candidate to be presented to the public for their selection to office.
In our Navajo thinking, great responsibilities of public service are placed on a naat’ánii, greater than may be commonly understood in other jurisdictions. Those who wish to serve must understand his/her own need to self-assess his/her own qualifications under the laws, his/her own abilities to serve, and the great needs of the public that in numerous cases lack the resources to watch over the actions of the naat’ániis they select. A candidate may not circumvent express conditions established by the Council by keeping silent until an election is over. Disqualifying conditions that are known to a candidate are not waived simply because an election has taken place. In short, the withholding of disqualifying conditions by a candidate goes to the self-assessment expected of a naat’ánii and his/her fitness to serve. The naat’ánii in the circumstances of this case would be expected to voluntarily “step back”—nát’qq ’ hizhdidoogáAl
It is our finding that the RPI, Leo Johnson, Jr., was not eligible to run as a candidate pursuant to 11 N.N.C. § 8(D)(4)(e) upon the filing of his sworn statement on May 30, 2012. Furthermore, the RPI was not eligible to run as of July 6, 2012, the effective date of amended 11 N.N.C. § 6(E). Finally, because Section 6(E) bans an employee from serving on a school board for five years following his school board employment, we find that the RPI has continued to be ineligible following his election, and would remain ineligible to serve on a SASI school board for five years following his resignation.
In 1991, we adopted the rule that “election statutes are mandatory when enforcement is sought prior to an election, but they are read to be directory only when challenges are raised after an election” and further stated that “the law presumes that elections whieh have already been held were conducted regularly and validly.” Haskie, at 338 citing Johnson v. June, 4 Nav. R. 79, 81 (Nav.App.Ct. 1983). The RPI has asked us to find that, pursuant to Haskie, the Appellant should have made a pre-election challenge. However, in 2003 the Council expressly provided pursuant to 11 N.N.C. § 8(D)(4)(j)(as amended) that each naat’ánii on a school board must maintain all qualifications throughout their term of office. Although it is implied that all elected officials should maintain their qualifications during their terms of office, Section 8(D)(4)(j) expressly sets forth this expectation with regards to school board members and makes the requirement mandatory. Section 8(D)(4)(j), as amended in 2003, uniquely allows school board members to be challenged on their qualifications under the Election Code after an election. In short, timing of the challenge does not affect the mandatory nature of the requirement, and disqualification followed by declaration of vacancy (and not invalidation of an election) is an option when qualifications are not maintained. Therefore, Section 8(D)(4)(j) supplants the Haskie rule with respect only to school board members. Pursuant to this provision, Appellant’s post-election challenge is timely and the remedy is disqualification.
Normally, the prevailing party who obtains a favorable judgment is entitled to the resulting remedies. However, in this *122 case, the proper remedy available to the Court pursuant to a post-election disqualification is limited to post-election provisions in which the Appellant has no entitlement in the appointment to the vacant office. We have previously stated that elected officials have no property interest in their office, and that any interest in that office belongs to the public. In re Removal of Katenay, 6 Nav. R. 81, 85 (Nav.Sup. Ct. 1989). The same holds true for candidates for an office. At all times, the focus of the election statutes for enforcement purposes must be on the public interest, both in the process and its fair outcome.
In 2005, by Resolution No. CS-55-05 (September 2, 2005), the Navajo Nation Council amended the Election Code by enacting the Navajo Nation Special Elections Act, which specifically addressed post-election vacancies. Pursuant to 11 N.N.C. § 45, “[i]n the event of ... disqualification after the general election of an elected person, a vacancy shall be declared.” In this case, the RPI has not yet taken his oath of office. “In the event of ... disqualification ... of an individual prior to his or her oath of office for a position he or she was elected to, a vacancy shall be declared for such position.” 11 N.N.C. § 140(F) (as moved in 2008 from its original codification at Section 141)(em-phasis added).
The Navajo Nation Special Elections Act specifically addressed how post-election vacancies occurring within the first half of an elective term of office are to be filled. Finding that filling such early vacancies with appointees would result in the position being held by an appointee not chosen by the public for nearly the entire term, the Council stated that the use of appointments should, therefore, be limited. Emphasizing the public’s fundamental right to vote for a candidate of their choice, the Council stated:
Appointments to elective positions should be made only when such vacancies occur within the second half of an elective term of office. Otherwise, vacancies should be filled by special elections.
Resolution CS-55-05, Section 3 (September 2, 2005).
The Council’s above findings have been codified at amended 11 N.N.C. § 143 which provide specifically for special elections under Subchapter 9 of the Election Code “[wjhenever a vacancy is declared for an elected office during the first half of a term of office[3].” 11 N.N.C. § 143 (as amended, September 2, 2005).
V
For the above reasons, we hereby REVERSE the November 27, 2012 Findings of Fact, Conclusions of Law and Final Order of the OHA and ORDER that Leo Johnson, Jr. be disqualified as school board member of SASI. The Court hereby ORDERS that the NEA declare a vacancy and that the vacancy be filled by special election pursuant to 11 N.N.C. § 143, as described supra. However, this Court is obliged to remind the responsible bodies that 11 N.N.C. §§ 42(B) and 145(C) direct that no individual may be placed on the special election ballot unless he/she is duly qualified pursuant to 11 N.N.C. §§ 8(D)(4) and 6(E). The Court cautions the chapter, the school board, and election board that the special election process described above should be completed expeditiously.
*123 Additionally, the Court acknowledges the efforts of the Appellant, Mae Y. Sandoval, at substantial cost, in ensuring that the Election Code is enforced. Pursuant to 11 N.N.C. § 22(B), Ms. Sandoval may re-file her candidate application.
The Court hereby revokes its opinion in this case issued on December 18, 2012 and replaces that opinion in its entirety with this opinion.

. Specifically, the candidates' application must contain a "notarized, sworn statement by the candidate that (a) he or she is legally qualified to hold the office” and “(b) that he or she meets the qualifications set forth in 11 N.N.C. § 8.”

. While there were procedural deficiencies in Haskie in that the write-in candidate was not duly certified by the NEA prior to being allowed to run, it is clear that the NEA, as the enforcement arm of the Board, is able to respond to unexpected events in the run-up to elections when it wishes.

. With the exception of a vacancy involving the Office of the Navajo Nation President or the Navajo Nation Vice President.