OPINION

TMs consolidated appeal concerns the application of the 10-day limitation contained in 11 N.N.C. § 24(A) to dismiss post-election complaints setting forth claims that the Election Code, 11 N.N.C. § 21(B)(2), was not complied with by a presidential candidate who allegedly filed a false sworn statement that he fluently speaks and understands Navajo, a qualification required by 11 N.N.C. § 8(A)(4). We reverse the Office of Hearings and Appeals (OHA) and remand the complaints for adjudication under 11 N.N.C. § 341(A)(1).
I
The Navajo Nation primary election was held on August 26, 2014 after a number of public debates. Out of a total of 17 candidates for the office of the Navajo Nation President, Joe Shirley, Jr. and Christopher C. Deschene (Deschene) prevailed as the top two candidates to be placed on the ballot for the general election. The Navajo Election Administration (NEA) had certified both candidates as eligible to run for the position prior to the primary election.
Within 10 days of the primary election, Dale E. Tsosie and Hank Whitethorne (collectively “Appellants”), candidates for the same position, filed written complaints with the OHA asserting that on April 14, 2014 Deschene submitted a candidate application with a false statement that he met all qualifications for the position, including the requirement in 11 N.N.C. § 8(A)(4) that he “must fluently speak and understand Navajo.”[1] (Emphasis added). The requirement for fluency in Navajo is a statutory requirement that was enacted by the Navajo Nation Council in 1990 as part *58 of the 1990 Election Code. Res. CAP-23-90. The Election Code does not define “fluently” and the Navajo Board of Election Supervisors did not adopt rules or regulations to implement and interpret this provision. The Appellants further assert Deschene has been open about his inability to fluently speak and understand Navajo at a number of public forums held in the months leading up to the primary election. Despite Desehene’s disclosures, it is undisputed that no challenges to his qualifications were filed by the Appellants prior to the primary election.
On September 10, 2014, the OHA dismissed both challenges concluding that the period to contest the qualifications of an eligible candidate had expired almost four months earlier under 11 N.N.C. § 24(A). The statute, 11 N.N.C. § 24(A), requires the NEA to hold candidate applications of all candidates it has certified as eligible for a period of 10 days during which sworn challenges may be filed with the OHA by applicants for the same position. The OHA found Deschene was certified as eligible on April 25, 2014 and, as a result, the OHA ruled the period to challenge Des-ehene’s qualifications had expired 10 days thereafter, or on May 6, 2014. This appeal followed.
On September 26, 2014, oral argument was held in Tuba City. At the conclusion of that hearing, we reversed the OHA’s decisions to dismiss both challenges and remanded the matter for adjudication. This opinion follows to explain our decision rendered on September 26, 2014 and to set forth the standard for fluency in the Navajo language.
n
The issues are 1) whether the OHA erred in applying the 10-day limitation contained in 11 N.N.C. § 24(A) to dismiss complaints against a presidential candidate that alleged he filed a false statement that he “fluently” speaks and understands Navajo; and 2) whether the requirement that a presidential candidate “must fluently speak and understand Navajo” is a reasonable regulation of a candidate’s right to political liberty.
III
The Court’s standard of review of the OHA’s decision is set by statute. Review is limited to “whether or not the decision of the Office of Hearings and Appeals is sustained by sufficient evidence on the record.” 11 N.N.C. §§ 24(G), 341(A)(4). Though the provision emphasizes the sufficiency of the evidence, clearly a decision based on an erroneous interpretation of the law cannot be sustained by sufficient evidence. When addressing the legal interpretations of administrative bodies, this Court applies a de novo standard of review. Todacheenie v. Shirley, No. SC-CV-37-10, 9 Am.Tribal Law 322, 324 (Nav.Sup.Ct. July 30, 2010) citing, inter alia, Begay v, NEA, 8 Nav. R. 241, 250, 4 Am. Tribal Law 604 (Nav.Sup.Ct.2002).
IV
The first issue concerns the OHA’s decision to dismiss Appellants’ grievances for having been untimely filed under 11 N.N.C. § 24(A). The Appellants assert the OHA erred in summarily dismissing their grievances under 11 N.N.C. § 24(A) because their complaints raised an Election Code violation under 11 N.N.C. § 341(A)(1), which permits such complaints to be raised “within 10 days of the incident complained of or the election.” (Emphasis added.) Appellants’ grievances concern Deschene’s noncompliance with the Election Code—the filing of a false statement in violation of 11 N.N.C. § 21(B)(2)—rather than the NEA’s facial *59 review and subsequent certification of Des-chene as a qualified candidate. On the other hand, Deschene asserts the grievances were appropriately dismissed because the NEA certified his application as eligible and held his application for a period of “10 days during which sworn challenges may be filed” under 11 N.N.C. § 24(A), and no challenges were filed during that time. In the alternative, Des-chene asserts the grievances were appropriately dismissed because the Appellants failed to file a complaint within 10 days of the alleged violation of the Election Code under 11 N.N.C. §, 341(A)(1), considering they each believed as early as May, 2014 that he violated 11 N.N.C. § 21(B)(2). Furthermore, Deschene requests that the dismissal be affirmed because “the Navajo People are the ultimate arbiters of whether ... [he] speaks Navajo well enough for each of them to be qualified to serve as President of the Navajo Nation.” Brief of Chris Deschene at 14 (September 25, 2014).
Pursuant to 11 N.N.C. § 21(A) candidates “who meet the applicable qualifications set forth in 11 N.N.C. § 8 must file a candidacy application with the Election Administration.” (Emphasis added). The use of the term “meet” means the qualifications in 11 N.N.C. § 8 are prerequisites. Pursuant to 11 N.N.C. § 21(B), all applicants intending to ran for an elected position must swear—in writing—at the time their candidacy applications are filed, that they meet all qualifications required by Navajo Nation law. 11 N.N.C. § 21(B)(2) (amended by CJA-02-14 (February 11, 2014)). Pursuant to 11 N.N.C. § 23, the NEA is then required to certify a candidate’s eligibility on the candidate’s attestation in the sworn statement. It is essentially an honor system appropriately imposed on every candidate seeking an elected position as a naat’ánii. The applicant is fully aware of the importance and consequence of his or her attestation, as pursuant to 11 N.N.C. § 21(B)(2)(d), the sworn statement also contains the candidate’s acknowledgement “that he or she may be removed as a candidate in the event his or her application contains a false statement.”
We emphasized in Sandoval v. NEA, 11 Am. Tribal Law 112 (Nav.Sup.Ct.2013) that
In our Navajo thinking, great responsibilities of public service are placed on a naat’ánii, greater than may be commonly understood in other jurisdictions. Those who wish to serve must understand his/her own need to self-assess his/her own qualifications under the laws, his/her own abilities to serve, and the great needs of the public that in numerous eases lack the resources to watch over the actions of the naat’ániis they select. A candidate may not circumvent express conditions established by the Council by keeping silent until an election is over. Disqualifying conditions that are known to a candidate are not waived simply because an election has taken place. In short, the withholding of disqualifying conditions by a candidate goes to the self-assessment expected of a naat’ánii and his/her fitness to serve.
Id., 11 Am. Tribal Law at 121.
After the NEA certifies a candidate as eligible for the position being sought, the NEA is mandated to “hold the candidate applications of all candidates it has certified as eligible for a period of 10 days during which sworn challenges may be filed with the Office of Hearings and Appeals by other applicants for the same position, whether or not such applicants are certified.” 11 N.N.C. § 24(A). Section 24(A) is a statute of limitations enacted by the Council restricting the time *60 within which legal proceedings may be brought to challenge the NEA’s facial review and certification of a candidate. After the period for challenge has expired, a certified candidate is presumed eligible unless determined otherwise under Navajo Nation law.
In the case before us, we find the complaints should have been considered by the OHA under 11 N.N.C. § 341(A)(1) rather than 11 N.N.C. § 24(A) because the challenges are not of the NEA’s facial review and certification of Deschene as eligible to ran, but instead allege that Des-chene violated the Election Code, 11 N.N.C. § 21(B)(2), by filing a false statement as to his qualifications. The OHA erred in dismissing the grievances under 11 N.N.C. § 24(A). Jurisdiction is proper under § 341(A)(1). We must now determine if the grievances were timely filed under 11 N.N.C. § 341(A)(1).
The Election Code requires:
Within 10 days of the incident complained of or the election, the complaining person must file with the Office of Hearings and Appeals a written complaint setting forth the reason why he or she believes the Election Code has not been complied with. If, on its face, the complaint is insufficient under the Election Code, the complaint shall be dismissed by the Office of Hearings and Appeals.
11 N.N.C, § 341(A)(1) (emphasis added). This Court has previously affirmed the election agency’s interpretation of this statute [then 11 N.T.C. § 321(B)(1), now 11 N.N.C. § 341(A)(1) ] to mean that “if a candidate knows of an Election Code violation before an election, he or she must take action within ten days of such an incident rather than do so after the election.” Haskie v, Navajo Board of Election Supervisors, 6 Nav. R. 836, 339 (Nav. Sup. Ct. 1991).
As to the requirement to promptly raise a challenge prior to an election, the Court has acknowledged that “an identifiable point or ‘incident complained of which we said should have prompted a challenge [under § 341(A)(1) ]” is not always apparent, and hesitated to affirm the requirement mandating any challenge within 10 days of certification “using statements in an application for candidacy when it may be difficult to obtain the facts.” Gishey v. Begay, 7 Nav. R. 377, 380, 2 Am. Tribal Law 432 (Nav. Sup. Ct,1999). The Court further stated: “We cannot permit potential candidates to make statements in public documents where they have almost exclusive knowledge of the facts and then escape the consequences of their declaration by a failure to [timely] contest it within ten days.” Id. Post-election challenges of a sworn statement concerning a candidate’s qualifications are therefore permissible after an election under 11 N.N.C. § 341(A)(1) where an attesting candidate had almost exclusive knowledge of the facts,[2] especially in situations “where the basic qualifications of a candidate are called into question and one where the prevailing candidate may not have been qualified to run” for the office of the Navajo Nation President under the Election Code. Id. at 381, 2 Am. Tribal Law 432.
Most recently, this Court reiterated that “[disqualifying conditions that are known to a candidate are not waived simply because an election has taken place ,.. [for] the withholding of disqualifying conditions by a candidate goes to the self-assessment expected of a naat’ánii and his/her fitness to serve.” Sandoval v. NEA, 11 Am. Trib *61 al Law 112, 121 (Nav.Sup.Ct,2013). Self-assessment is of utmost importance in a system that relies solely on the honor of a candidate at the onset of the election process under 11 N.N.C. § 21.
After Sandoval, the Council amended 11 N.N.C. § 8 for the purposes of clarifying that all elected officials must maintain qualifications of their respective offices throughout their term of office or be subject to removal. 11 N.N.C. § 8(F) (as enacted by CJA-02-14 on February 11, 2014). Removal provisions were amended for enforcement of qualifications specified in 11 N.N.C. § 8 in spite of the 10-day limitation contained in 11 N.N.C. § 24(A), or even 11 N.N.C. § 341(A)(1). Where elected officials are explicitly required to maintain the qualifications of their offices throughout their terms of office, the filing of post-election challenges concerning qualifications are not limited by 11 N.N.C. § 341(A)(1).
Based on the foregoing, we find the Appellants’ post-election challenges are timely under 11 N.N.C. § 341(A)(1).
V
We now address the requirement for fluency in the Navajo language. Deschene argues the requirement for fluency in Navajo should be disregarded in favor of the 9,831 voters (19% of all voters of the primary election),[3] who voted for him because the qualification is vague, ambiguous, subjective and discriminating against young and educated Navajos, We strongly disagree.
The law that a candidate for the office of the Navajo Nation President “[m]ust fluently speak and understand Navajo and read and write English,” 11 N.N.C. § 8(A)(4), is clear and unambiguous, and a reasonable regulation of a candidate’s right to political liberty. Candidates have a “Fundamental Law right to participate in the political system by running for office.” In re Grievance of Wagner, 7 Am. Tribal Law 528, 532 (Nav.Sup. Ct.2007) (citing Begay v. NEA, 8 Nav. R. 241, 249, 4 Am. Tribal Law 604 (Nav.Sup. Ct.2002)). “While the right or privilege of placing one’s name in nomination for public elective office is a part of political liberty, thus making it a due process right, that liberty may be restricted by statute. Any such restriction must be reasonable and forward some important governmental interest.” Bennett v. Navajo Board of Election Supervisors, 6 Nav. R. 319, 325 (Nav. Sup. Ct. 1990).
As Diñé, we are the image of our ancestors and we are created in connection with all creation. Upon our creation, we are identified by:
Our Diñé name,
Our clan,

Our language,

Our life way,
Our shadow,
Our footprints.
Therefore, we were called the Holy Earth-Surface-People [Diyin Nahookáá Diñé ],
[[Image here]]
Different thinking, planning, life ways, languages, beliefs, and laws appear among us, But the fundamental laws [Dim bi beehaz’áanii bitsé siléi ] placed by the Holy People remain unchanged.
1 N.N.C. § 201 (emphasis added).
Dim bi beenahaz'áanii is the foundation of Diñé bi nahat’á (providing leadership *62 through developing and administering policies and plans utilizing these laws as guiding principles) and Diñé sovereignty. In turn, Diñé bi nahat’á is the foundation of the Diñé bi naat’á (government). Diñé bi beenahaz’áanii recognizes the freedoms of the individual Diñé but it also firmly supports “the [collective] right and freedom of the people that the sacred Diñé language (nihiinéí’) be taught and preserved....” See 1 N.N.C. § 204(C). The individual freedoms of each Diñé have long been respected but restricted by the collective rights of the Diyin Nohookáá Diñé, the fundamental values and principles of Diñé Life Ways, and our inherent right to self-govem.
So long as there is a reasonable basis for the restriction and an important governmental interest is advanced, in this case the collective right that the sacred Diñé language (nihiinéí’) be preserved by requiring fluency in Navajo as a requirement of the highest elected official, this Court will presume that the Council will not enact legislation which would deny civil rights. Sandoval, 11 Am. Tribal Law at 119-20. The legal requirement applies generally to all presidential candidates. There is no evidence to show the law was intended to discriminate against the young person who may not be fluent and who may aspire to be a leader. There is no indication from the legislative history of this provision that would overcome the presumption in Navajo law that duly enacted laws are presumed to be valid. From the policy enunciated in Title 1, the reasonableness of the fluency qualification in Title 11 is beyond question. The law was enacted to preserve, protect, and promote self-determination, for which language is essential. Diñé binanita’í jil%%go nábináhouzláago Diñé bizaad bee yájítti’ dóó bik’izhdiity%hdoQ háálá Diñé bina’niti-ní jü% dóó Diñé bájizi dóó bich’qqh jiz%. Therefore, we find the requirement for fluency in the Navajo language is a reasonable regulation of a candidate’s right to participate in the political system. We therefore reject Deschene’s arguments to simply disregard the explicit requirement for fluency as specified in 11 N.N.C. § 8(A)(4).
This Court has the authority to clarify 11 N.N.C. § 8(A)(4). This Court may clarify this provision pursuant to our duty in all cases to apply applicable Navajo Nation statutory laws, here 11 N.N.C. § 8(A)(4), and the utilization of Diñé bi beenahaz’áanii to guide the interpretation of that provision as required by 7 N.N.C. § 204(A). At the hearing, we explained in Navajo and in English that:
In this society, this Court has an obligation to interpret Navajo law and enforce Navajo law. When we carry out that responsibility, that responsibility is not limited to an interpretation of statutory laws—those laws made by human beings to regulate other human beings in society. We consider ancient laws also. The ancient laws of the Holy People take precedence because these are sacred laws that we were placed here with. As an illustration, we recount the time in our history when the Navajo people, after being placed on this Earth, lived with the Holy People so they would be educated about our ancient laws—the right and wrongs. But there came a time when the Holy People were about to leave. If you can picture that occasion, the people were in a hooghan and the Holy People were one-by-one filing out. One of them, Haashch’éétti’í (Talking God), poked his head back through the doorway and said, “My children, there is one thing that I must tell you: do not forget the value system that we have given you.” In the Navajo language that system is expressed as Naakits ’áadahgo ójí. Core to that sys *63 tem is the language. The value system—the law of the Navajo people—is embedded in the language. When Haashch’éétti’í said that to the people, that in itself became the establishment of a law—bee haz’áanii Now you take that law and apply it. It is how our people survived as a society since time immemorial.
Over 140 years ago, upon the return of the Navajo people back to Navajo country from Hwééldi, the people were gathered somewhere around Fort Win-gate, and the leader at the time, Man-uelito (Hastiin Ch’ilhaajinl), spoke to them. He said, “My people, my relatives, my children, you are about to go back to the homeland. As you do, I must tell you that you must not forget our ways. You must not forget the language (nihizaad nihil ch’aawóle’ lágo ), the prayers, and the songs. This is what got us through this experience that we are coming from.” When you think about that and the law that was established by the Holy People, our human leaders of the past obeyed that. And they carried out the responsibility of instructing the young ones that they must also carry this on. So that is ancient law that we consider in the interpretation of Navajo statutory laws.
Summary of audio recording of Oral Argument at 2:20:43 (September 26, 2014). In accordance with our duty to interpret Navajo statutory law using Dine bi beena-haz’áanii, we therefore interpret the meaning and adopt a standard for “fluently” as offered by the Appellants as follows:
Da dilkqqhgo, t’áá k’idahineezláago, t’áá chánahgo, diits’a’go, háálá Diñé Binan-it'a’í ídlítgo éí lahdóó baa yájílti’ (talk about), nabík’í yájílti’ (analysis speech), bich’f yájílti’ (to talk about), hach’i’yáüi’ (to be talked to), and Dine k’ehgo bik’izhdn’t\\h (comprehending the substance in the toé language).
Although we are authorized to review the OHA’s record on appeal to determine if its decision is “sustained by sufficient evidence on the record,” 11 N.N.C. § 341(A)(4), the OHA did not make any findings of fact and conclusions of law on the merits, having erroneously dismissed the grievances. We are therefore without a ruling by the OHA as to whether Des-chene violated 11 N.N.C. § 21(B)(2), specifically whether he filed a false statement at the time he filed his candidacy application and whether Deschene meets the qualifications for the office of the President, which would require an initial determination whether Deschene is fluent in the Navajo language. The authority to make such determinations rests solely with the OHA. 11 N.N.C. § 341. We therefore remand the grievances to the OHA. The OHA shall determine whether or not to disqualify Deschene as a candidate by applying the standard we adopted above. Deschene shall cooperate with the OHA as it carries out its duty.
VI
The Court REVERSES the OHA Docket matters OHA-E C-005-14 and OHA-EC-007-14 are REINSTATED and REMANDED to the Office of Hearings and Appeals for adjudication. The OHA shall hold a hearing within 5 business days (October 3, 2014) to determine whether or not to disqualify Christopher C. Deschene as a candidate for the office of the Navajo Nation President.
Dated this 8th day of October, 2014; effective nunc pro tunc as of September 26, 2014.

. Appellant Whitethorne also claimed Des-chene was not qualified under 11 N.N.C. § 8(A)(5), but in our September 26, 2014 Order of Remand, we found that argument merit-less because that provision was invalidated by Bennett v, Navajo Board of Election Supervisors, 6 Nav. R. 319 (Nav.Sup.Ct. 1990).

. For example, during oral argument, Des-chene asserted he understood everything that Appellant’s counsel, Justin Jones, had said in Navajo—a fact only he would know.

. Of course, as Appellants point out, the 81% of voters who did not vote for Deschene in the primary were assessing his fluency as well.